UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—--------------------------------------x

RONALD DAVIDSON,
                              Plaintiff,

    -- against --


CITY OF NEW YORK (NYC),
MICHELLE MORSE, MOLLY PARK,
JOHN HAMMOND, ABIODUN OYENIYI,
EVE CLEGHORN, ROSE NANTANGO,            1:25-cv-_____
LYDIA PICKER, AKIM NORVILLE,
VICTOR AMELYANCHYK, LYMARIS             COMPLAINT
ALBORS,  GABRIELLA GONZALEZ,
SANA CAMPBELL-GILMORE, CLEAVON
JENKINS, COTANDRA DAVIS, VALERIE
COOK, JANE DOE1/CORREA, LILA
MONTANEZ, TIFFANY TEAGUE,
JANE DOE2/BOSTICK, ANGEL GODDARD,
ERNESTO MEYERS, ANDREA WATKINS,
RISE ABDULLAH, ANGELA BRENT,
JANE DOE3/EVERETT, RON ABAD,
COMMUNITY HOUSING iNITATIVES (CHI),
RICHARD LEWIS, CLAUDETTE PHIPPS,
EARL HOLDER,

CLEAN RITE CENTERS,

DAVID GIFFIN, NYC COALITION
FOR THE HOMELESS (CFTH),

STATE OF NEW YORK (NY),
JAMES MCDONALD, NY DEPARTMENT
OF HEALTH, THOMAS DINAPOLI,  NY
OFFICE OF THE COMPTROLLER (OSC),
KIMBERLY HILL, NY OFFICE OF THE
CHIEF DISABILITY OFFICER (CDO),

                              Defendants.
—--------------------------------------x

## PRELIMINARY STATEMENT

1. The Federal Rules of Civil Procedure (FRCP) Rule 9 explains that claims of fraud must be pleaded with particularity; moreover, the prolix writing in this Complaint submission is an exception to FRCP Rule 8 per 28 USC §2074(b), in part because this case of first impression obliges this Court to construe the 2025 amendment to Article I, §11 of the New York (NY) Constitution as relief and remedy for the harms and irreparable damages caused by public entity Defendants and New York City (NYC) contractors and Defendant Clean Rite; and this is urgently needed by the Plaintiff and made essential by the knowing actions and inaction of the Defendants despite

(a) serial, redundantly repeated legislative mandates and express warranties which have targeted the "protected class" of NY/NYC people with disabilities, including the Plaintiff; and

(b) serial, redundantly repeated contract agreements which accompany the acceptance of federal financial assistance, as documented in NYC land records for all to read and construe as express warranties per UCC §2-313. -– see *Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. ___, 135 S.Ct. 1378, 1378 (2015) ["Congress *provides federal funds in exchange for the States' <u>agreement to spend them in accordance with congressionally imposed conditions</u>*"] [emphasis added with *italics* and <u>underlining</u>]; and see in *Ex parte Young*, 209 U.S. 123, 143 (1908), citing *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) ["With whatever doubts, with whatever difficulties, a case may be attended, we must decide it if it be brought before us. …. Questions may occur which we would

gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment and conscientiously to perform our duty."]

2. Public entity Defendants and NYC contractor Defendants acted independently and together to worsen the Plaintiff's disabilities for the purpose of blocking, confusing and/or delaying his persistent efforts to seek meaningful and timely relief in this Court, including targeted barriers which blocked the submission and docketing of this Complaint; and although the Plaintiff made many serial requests for accommodations based on the Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, 104 Stat. 327, the gravamen of each of his attempts was denied

(a) in violation of well-settled and understood statutory and contractual anti-discrimination obligations; and

(b) in violation of Section 109 of the  Community Development Act of 1974, (HCDA) Pub. L. 93-383, 88 Stat. 633; and

(d) in violation of Section 1557 of the  Patient Protection and Affordable Care Act of 2010 (ACA), Pub. L. 111-148, 124 Stat. 109–1025, codified at 45 USC §8116.  — see #(1) Exhibit 1: Form DHS-13 (E) 08/04/22 (page 1 of 3) LLF re disability accommodation; also identified as ECF No. 110-1 in Davidson v. OCA, 1:22-cv-08936-PGG-VF (SDNY 10/09/24) re disability accommodation; and #(2) Exhibit 2: Letters re re disability accommodation

3. In the contexts established/alleged in paragraphs 1-2 above, the Plaintiff seeks relief from the public entity leadership of a complex conspiracy of unlawful actions and inaction in furtherance of criminal and civil frauds which contravene

3

(a) the federal Bureau of Consumer Financial Protection's functional purposes; and

(b) the Electronic Fund Transfers Act of 1978 (EFTA), Pub. L. 95-630, 92 Stat. 3641, codified at 15 USC §1693 *et seq*.; and

(c) the NY General Business Law (GBL); and

(d) the NY Uniform Commercial Code (UCC). — see 28 CFR §35.108(d)(2)(iii)(K) [predictable assessments]; and see #(3) Exhibit 3: NYC Department of Homeless Services (DHS) notice re Clean Rite at 1691 East New York Avenue in Brooklyn.

4. The federal judiciary's duty to the Plaintiff arises from Article IV of the Constitution, the 14th Amendment and the Civil Rights Act of 1871 (Ku Klux Klan Act), Pub. L. 42-22, 17 Stat. 241, codified at 42 USC §1986 [action for neglect to prevent] and 42 USC §1985 [conspiracy to interfere with civil rights], in a context of federal financial assistance misused in concurrent violation of 42 USC §12134(b) [criteria or methods of administration] and 42 USC §12203 [retaliation]. — see *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982) [official is "expected to know that certain conduct would violate statutory or constitutional rights"]; and see *Henrietta D. v. Bloomberg*, 331 F.3d 261, 268 (2d Cir. 2003) ["chronically and systematically failing to provide plaintiffs with meaningful access"]; and see *Hamer v City of Trinidad*, 924 F3d 1093 (10th Cir 2019) [continuing violation vs repeated violations]

5. In the contexts established/alleged in paragraphs 1-4 above and paragraphs 6-189 below, Michelle Morse, MD, MPH, is necessary as a Defendant in her official capacity

as NYC Chief Medical Officer (CMO); and this is because she has the functional duty combined with broadly-defined powers to address the underlying  public health hazards and emergencies which this action documents; and the CMO's epidemiological perspective, analytical understanding, and professional medical experience are today unengaged — deliberately indifferent — to systemic unlawful discrimination which causes life-altering harms and irreparable injuries to a "protected class" of vulnerable New Yorkers, like the Plaintiff, whose common qualifying characteristic is the medical diagnosis which underlies each man and woman's specific, varied and sometimes unique handicaps and disabilities.

6. The Plaintiff seeks declaratory relief which focuses this Court's powerful spotlight on serial frauds which are intertwined and enabled by patterns and practices which weaponize unlawful discrimination to enable/protect/cover-up criminal and civil frauds; and in these contexts, although the Plaintiff timely presented repeated, redundant requests for accommodation of his neurological and post-pandemic disabilities, the gravamen of his words was repeatedly denied in violation of

> (a) the Rehabilitation Act of 1973 (RA), Pub. L. 93-112, 87 Stat. 355; and
>
> (b) the HCDA; and
>
> (c) the Age Discrimination Act of 1975 (Age Act) Pub. L. 94-135, 89 Stat. 728 ; and
>
> (c) the ADA, as re-focused with redundant emphasis in the ADA Amendments Act of 2008 (ADAAA), Pub L. 110-325, 122 Stat. 3553; and
>
> (d) the ACA.

7. The patterns and practices of public entity Defendants and NYC contractors are today functioning as an on-going conspiracy of well-settled custom or usage with the force of law in purposeful contravention of the Civil Rights Restoration Act of 1987 (CRRA), Pub. L. 100-259, 102 Stat. 28 — see *Adickes v. S. H. Kress Co.*, 398 US 144, 168 (1970) ["practices . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law"]; and see #(4) Exhibit 4: Form DHS-48d(E) 11/30/22 (page 1 of 5) LLF re transfer; and see #(5) Exhibit 5: Letters re adverse effects of disability in transfer; and see #(6) Exhibit 6: 1st attachment to Ex. 5 — Letter re disability accommodation; and see #(7) Exhibit 7: 2nd attachment to Ex. 5 = same as Ex.1; and see #(8) Exhibit 8: 3rd attachment to Ex. 5 — 49 FR 35724, 35728 (September 11, 1984) re disability accommodation

8. Every Defendant is a direct recipient of federal dollars or an indirect recipient of dollars made available to pass-through public entities via more than one federal funding stream; and all but one Defendant has contractually agreed to express warranties — a  mandatory, not precatory obligation — to comply with the RA), the Age Act, the ADA — as re-focused with redundant emphasis in the ADA Amendments Act of 2008 (ADAAA), Pub L. 110-325, 122 Stat. 3553 — and the ACA.

9. In the contexts established/alleged in paragraphs 1-8 above, the intentional frauds, errors and omissions in the record-keeping of public entity Defendants and NYC contractors present this Court with recurring, redundant documentary evidence of systemic fraud and unlawful discrimination based solely on disability in concurrent

violation of contract covenants to comply with federal regulations implementing the RA, the HCDA and the Age Act, e.g.,

(a) US Department of Housing and Urban Development (HUD) regulation at 24 CFR §8.4(b)(4)(i)-(iii) re RA; and accord 24 CFR §6.4(a)(3)(iv)(B) re HCDA and the Age Act; and non-compliance violates NY UCC §2-313 [express warranty], e.g.,

24 CFR §8.4(b)(4) In any program or activity receiving Federal financial assistance from the Department, a recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration the purpose or effect of which would:
(i) Subject qualified individuals with handicaps to discrimination solely on the basis of handicap;
(ii) Defeat or substantially impair the accomplishment of the objectives of the recipient's federally assisted program or activity for qualified individuals with a particular handicap involved in the program or activity, unless the recipient can demonstrate that the criteria or methods of administration are manifestly related to the accomplishment of an objective of a program or activity; or
(iii) Perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State."— see 42 USC §12134(b) establishing context for analysis of prototype 28 CFR §39.130 at 49 FR 35724, 35728 (Sept. 11, 1984)  ["The phrase "criteria or methods of administration" refers to official written … policies *and to the underlining practices* …. This subparagraph prohibits both blatantly exclusionary policies or practices and *nonessential policies and practices that are neutral on their face, but deny handicapped persons an effective opportunity to participate*"] [emphasis added with *italics* and underlining]

(b) HUD regulation at 24 USC §8.56(k) [retaliation] re RA; and accord 24 CFR §6.4(a)(3)(iv)(B) re HCDA and the Age Act; and accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and non-compliance violates NY UCC §2-313 [express warranty].

(c) US Department of Health and Human Services (HHS) regulation at 45 CFR §84.4(b)(4) ["criteria or methods of administration that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap"] re RA; and accord 45 CFR §92.101 re ACA; and non-compliance violates NY UCC §2-313 [express warranty].

(d) HHS regulation at 45 CFR §84.61 [retaliation] re RA; and accord 45 CFR §92.101 re ACA; and accord NYC NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and non-compliance violates NY UCC §2-313 [express warranty].

(e) HHS regulation at 45 CFR §91.45 [retaliation] re the Age Act; and accord 45 CFR §92.101 re ACA; and accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and non-compliance violates NY UCC §2-313 [express warranty].


10. In the contexts established/alleged in paragraphs 1-9 above, the acceptances of federal financial assistance by public entity Defendants and NYC contractors are contingent on documented, legally binding assurances of meaningful compliance with

(a) the statutory mandates of Titles II and IV of the ADA, as amended; and

(b) US Department of Justice (DOJ) regulations implementing the ADA, e.g.,

(i) 28 CFR §35.130(b)(3) [criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability]; and non-compliance violates NY UCC §2-313 [express warranty]

(ii) 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and non-compliance violates NY UCC §2-313 [express warranty]

(iii) 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and non-compliance violates NY UCC §2-313 [express warranty].

(iv) 28 CFR §35.164 — see #(9) Exhibit 9: Letters re 28 CFR §35.164; and see #(10) Exhibit 10: 1st attachment to Ex. 9 = Letter to SDNY judge re disability accommodation; and see #(11) Exhibit 11: 2nd attachment to Ex. 9  = same as Ex. 1; and see #(12) Exhibit 12: 3rd attachment to Ex. 9 = same as Ex. 8 ; and see #(13) Exhibit 13: Letter re 28 CFR §35.164; and see #(14) Exhibit 14: Letters re 28 CFR §35.130 and 28 CFR §§35.160; and see #(15) Exhibit 15: Letter re SDNY; and see #(16) Exhibit 16: 1st attachment to Ex. 15 — Letter to US District Judge Laura Swan; and see #(17) Exhibit 17: 2nd attachment to Ex. 15 — Letter to US District Judge Arun Bramanian; and see #(18) Exhibit 18: 3rd attachment to Ex. 15 — Letter to US Magistrate Judge Figuredo


11. In the contexts established/alleged in paragraphs 1-10 above, the frauds, errors and omissions in the systematically unexamined records of NYC contractors function as congruent evidence of a conspiracy of purposeful intentions to reject and undermine/ignore aka "nullification" of 50+ years of contractual agreements and 30+ years of statutory obligations targeting a "protected class" which includes the Plaintiff. — see *Henrietta D., supra* at 278 [FRCP is "designed such that a party will not bear

the burden of proof … when the evidence needed is not typically within the party's control"]; and see the Settlement Agreement (ECF 67) in *Butler v. City of New York*, 1:15-cv-03783 (RWS) (JLC); and see 28 CFR §35.101 [whether entities have complied with their obligations], accord NYC UCC §2-313 [express warranty]

12. In the contexts of deliberate indifference and nullification which have been contrived by individual men and women functioning as agents of city and state government, the personal liability of each man and woman for violations of 42 USC §1986 [action for neglect to prevent] and 42 any USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint —  became specific many times when each acted affirmatively to exacerbate the effects of the Plaintiff's disabilities in retaliation for his robust assertion of program access rights which are identified as essential in the the RA, the HCDA, the Age Act, the CRRA, the ADA,  the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. 104-191, 100 Stat 1936, and the ACA; and some of the agents of public entity Defendants did this to the Plaintiff for fun. — see 28 CFR §35.108(d)(2)(iii)(K) [predictable assessments]; and see *Butler, supra*; and see *Henrietta D., supra* [burden of proof]; and  see #(19) Exhibit 19: Letter re communication disabilities; and see #(20) Exhibit 20 — attachment to Ex. 19 re assistive aids, services and modifications of procedure, e.g., laptop, internet, desk; and see #(21) Exhibit 21: Letter re executive function disabilities; and see #(22) Exhibit 22: — attachment to Ex. 21 re assistive aids, services and modifications of procedure, e.g., plastic baskets

13. In the contexts established/alleged in paragraphs 1-12 above, the personal liability of agents of NYC and its contractors became specific many times when each acted independently and together to target the Plaintiff's disabilities for the purpose of blocking, confusing and/or delaying his persistent efforts to seek meaningful and timely relief in this Court, including targeted barriers which blocked the docketing of this Complaint.

14. In the contexts established/alleged in paragraphs 1-13 above, agents of the NYC Human Resources Administration (HRA)/Department of Social Services (DSS)/Department of Homeless Services (DHS) and agents of NYC contractors and agents of the NYC Department of Health and Mental Hygiene (DOHMH) and pass-through recipients of federal funding conspired together; and this conspiracy weaponized unlawful discrimination and gaslighting strategies/tactics for the purpose of enabling, protecting and maintaining intermingled criminal and civil frauds; and this will have been documented in NY and NYC records.

15. In the contexts established/alleged in paragraphs 1-14 above, the Defendants, acting individually and together, contrived an inter-mingling of systemic violations of federal, state and municipal disability rights laws within schemes for unjust enrichment prohibited by the EFTA and the NY GBL; and this will have been documented in in NY and NYC records. — see *Butler, supra*; and see *Henrietta D., supra* [burden of proof]; and see NYC Department of Investigation (DOI), "DOI's Examination of Compliance Risks at City-Funded Homeless Shelter Providers and the City's Oversight of Shelter Providers" (October 2024).

https://www.nyc.gov/assets/doi/press-releases/2024/October/39DHSRptRelease10.17.2024.pdf; and see NY Office of the State Comptroller (OSC) audit, "Oversight of Shelter Placements" (December 2022) https://www.osc.ny.gov/state-agencies/audits/2022/12/01/oversight-shelter-placements

16. In the contexts established/alleged in paragraphs 1-15 above, the Plaintiff seeks timely declarative relief as well as compensatory, statutory, and special/punitive damages as anticipated in the legislative histories of federal, state and local law.

17. The scienter which underlies the Defendants' patterns and practices of deliberate indifference — and the purposeful, brazen and cruel "nullification" of the safety nets enacted to protect the Plaintiff — were anticipated 35 years ago in the legislative history of the ADA, e.g.,

> HEARING BEFORE THE COMMITTEE ON LABOR AND HUMAN RESOURCES AND THE SUBCOMMITTEE ON THE HANDICAPPED,
> United States Senate, One Hundred First Congress, First Session on S. 933, Wednesday, May 10, 1989 …; TESTIMONY BY NEIL HARTIGAN, Attorney General of the State of Illinois … at pp. 74-88 in the printed US Senate report, reproduced on p. 8 of 9 in the Federal Depository microfiche set, SUDOC No. Y1.L11/4.S.HRG. 101-159 (1989)
>
> MR. HARTIGAN: … We *fail to confront the real scope of the problem if we consider only the most dramatic examples* of discrimination.  We must also *consider the simple, ordinary, daily routines that most of us take for granted* ….
> — p. 76
>
> [T]*he whole trick is to make it <u>more expensive to break the law than it is to keep the law</u> ….* — p. 80
>
> [W]*e need damages … because if you don't have them in this bill, then you are back to the Rehabilitation Act of 1973, which sounds great – everybody is*

for the disabled – it doesn't do them a bit of good though, unless there is some muscle behind it …. — pp. 80-81

SENATOR HARKIN: Also, it is my observation that, *if you don't have the damages in there, that in fact, the cost of litigation and so on will actually increase, because people will prolong this on and on and on; but if they know that damages hang there, they are more willing to reach some kind of accommodation early on and, as you say, become part of the solution* — p. 82

MR. HARTIGAN: Sure, no question about it.  *That is the traditional way of stretching out the individual.  I mean, a person with a disability has got enough problems simply dealing with life on a day-to-day basis – but then, to go … through a couple of years of delays and continuances and every way there is of milking the system, simply adds to the problem* …. — p. 82

SENATOR KENNEDY: … If you look back to the Civil Rights Act of 1964 [Pub. L. 88–352, 78 Stat. 241], … we were able to make progress.  Those that talk about just tracking Title II of the Civil Rights Act of 1964 are not looking at *the combination of different Federal laws which included punitive damages in order to achieve a public policy outcome*. And that was reaffirmed in the Fair Housing legislation of last year, where we had not only injunctive relief, but we also included the damage provisions.

*I think we are entitled to have learned from past experience.  I think that is part of the legislative process.  We have learned what has been effective.*  We learned in the Fair Housing of 1968 [Pub. L. 90-284, 82 Stat. 73] that just administrative procedures and consultation did not work, and that is why we had to take the action last year [the Fair Housing Amendments of 1988, Pub. L. 100-430, 102 Stat. 1619]

So, it seems to me …, the part of *the enforcement provisions in the Americans with Disabilities Act are based upon a very sound, continuing, ongoing record and a record of history in terms of how we can really achieve policy objectives* …. [emphasis added with *italics* and underlining] — p. 83

## A. Context re Executive Order

18 This prolix Preliminary Statement focuses much-needed scrutiny on federal dollars "being used to perpetuate patterns of conduct which inhibit the full enjoyment of Federal financial assistance by all groups within our society" — harming especially the array "protected classes" based solely on disability, as have been defined in federal,

state and municipal law. — see US Executive Order 12250 signing statement of

President Jimmy Carter:

> I believe that the action I am taking today will make it *easier for those*
> *jurisdictions which wish to comply with Federal nondiscrimination statutes and*
> *much harder for those who seek to violate those provisions*. It is an outgrowth
> of my determination *to prevent Federal dollars from being used to perpetuate*
> *patterns of conduct which inhibit the full enjoyment of Federal financial*
> *assistance by all groups within our society*. [emphasis added with *italics* and
> *underlining*] — see 45 FR 72995 (Nov. 4, 1980) re US Exec. Order 12250 (EO
> 12250), ''Leadership and Coordination of Nondiscrimination Laws;'' and see EO
> 12250 Signing Statement,  November 2, 1980

## B. Context re protected class member

19. The Plaintiff is a vulnerable 75-year-old man with disabilities who was forced to

endure decades of life below the national and local poverty levels because of

Traumatic Brain Injury (TBI) in 1979, as confirmed/defined by 42 USC §423(d) and

the Social Security Administration.

20. It is fundamental that persons with disabilities like the Plaintiff were expressly

targeted for protection

(a) 40+ years ago by the statutory and national anti-discrimination policy — see

2 CFR §200.300(a)

(b) 50+ years ago by NY/NYC acceptance of HCDA-enabled federal funding

streams entailed with mandatory, not precatory, contractual anti-discrimination

obligations; and

(c) 80+ years ago by the United States Housing Act of 1937, Pub L 75-896, 50

Stat 888, as amended by the HCDA. — see property records in New York County

at Block 1373, Lot 40


21. Since 1979, the Plaintiff's TBI has caused a predictable array of executive function

impairments; and the ADA was enacted to help mitigate the harms and irreparable

injuries caused by exclusionary barriers and segregation which the Plaintiff and other

"protected class" men and women are still today compelled to suffer, as documented

by this action. — see 28 CFR §35.108(d)(2)(iii)(K) [predictable assessments]; and see

56 FR 35594, 35703 (July 26, 1991) re 28 CFR §35.130 ["... to prohibit exclusion and

segregation of individuals with disabilities and *the denial of equal opportunities*

enjoyed by others, based on, among other things, *presumptions*, *patronizing*

*attitudes*, fears, and *stereotypes* about individuals with disabilities. Consistent with

these standards, _public entities are required to ensure that their actions are based on_

_facts_ applicable to individuals and not on presumptions"] [emphasis added with *italics*

and _underlining_]; and see AG Order 3702-2016, 81 FR 53225 (Aug. 11, 2016):

> A. Re neurological disability
> *Examples of Major Life Activities, Other Than the Operations of a Major Bodily*
> *Function* In the NPRM, at §§ 35.108(c) and 36.105(c), the Department proposed
> revisions of the title II and title III lists of examples of major life activities (other
> than the operations of a major bodily function) to incorporate all of the statutory
> examples, as well as to provide additional examples included in the EEOC title I
> final regulation—reaching, sitting, and interacting with others. See 29 CFR
> 1630.2(i)(1)(i). A number of commenters representing persons with disabilities
> or the elderly recommended that the Department add a wide variety of other
> activities to this first list. Some commenters asked the Department to include
> references to test taking, writing, typing, keyboarding, or executive function.5
> _____
>     5 "Executive function" is an umbrella term that has been described as
>     referring to "a constellation of cognitive abilities that include the ability to

plan, organize, and sequence tasks and manage multiple tasks simultaneously.'' See, e.g. National Institute of Neurological Disorders and Stroke, Domain Specific Tasks of Executive Functions, available at grants.nih.gov/grants/guide/notice-files/NOT-NS04-012.html (last visited Feb. 3, 2016). -- see 81 FR 53228 [PDF p. 25 of 40] https://www.govinfo.gov/content/pkg/FR-2016-08-11/pdf/2016-17417.pdf#page=25

*B.* Re traumatic brain injury to frontal lobe of the brain

*Sections 35.108(b) and 36.105(b)—Physical or Mental Impairment* The ADA Amendments Act did not change the meaning of the term ''physical or mental impairment.'' Thus, in the NPRM, the Department proposed only minor modifications to the general regulatory definitions for this term at §§ 35.108(b)(1)(i) and 36.105(b)(1)(i) by adding examples of two additional body systems—the immune system and the circulatory system—that may be affected by a physical impairment be affected by a physical impairment.

In addition, the Department proposed adding ''dyslexia'' to §§ 35.108(b)(2) and 36.105(b)(2) as an example of a specific learning disability that falls within the meaning of the phrase ''physical or mental impairment.'' Although dyslexia is a specific diagnosable learning disability that causes difficulties in reading, unrelated to intelligence and education, the Department became aware that some covered entities mistakenly believe that dyslexia is not a clinically diagnosable impairment. Therefore, the Department sought public comment regarding its proposed inclusion of a reference to dyslexia in these sections.

The Department received a significant number of comments in response to this proposal. Many commenters supported inclusion of the reference to dyslexia. Some of these commenters also asked the Department to include other examples of specific learning disabilities such as dysgraphia 1 and dyscalculia.2  Several commenters remarked that as ''research and practice bear out, dyslexia is just one of the specific learning disabilities that arise from 'neurological differences in brain structure and function and affect a person's ability to receive, store, process, retrieve or communicate information.' '' These commenters identified the most common specific learning disabilities as: ''Dyslexia, dysgraphia, dyscalculia, auditory processing disorder, visual processing disorder and nonverbal learning disabilities,'' and recommended that the Department rephrase its reference to specific learning disabilities to make clear that there are many other specific learning disabilities besides dyslexia. The Department has considered all of these comments and has decided to use the phrase ''dyslexia and other specific learning disabilities'' in the final rule.

--------

1 Dysgraphia is a learning disability that negatively affects the ability to write.

2 Dyscalculia is a learning disability that negatively affects the processing and learning of numerical information. -- see 81 FR 53227 [PDF p. 25 of 40] https://www.govinfo.gov/content/pkg/FR-2016-08-11/pdf/2016-17417.pdf#page=24

C. Re amelioration per interactive process needed to achieve meaningful program access

*Mitigating measures* include, but are not limited to:

(i) Medication, medical supplies, equipment, appliances, low-vision devices (defined as devices that magnify, enhance, or otherwise augment a visual image, but not including ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aid(s) and cochlear implant(s) or other implantable hearing devices, mobility devices, and oxygen therapy equipment and supplies;

(ii) Use of assistive technology;

(iii) Reasonable modifications or auxiliary aids or services as defined in this regulation;

(iv) Learned behavioral or adaptive neurological modifications; or

(v) Psychotherapy, behavioral therapy, or physical therapy. —see 81 FR 53227

[PDF p. 22 of 40]

https://www.govinfo.gov/content/pkg/FR-2016-08-11/pdf/2016-17417.pdf#page=22; and see 28 CFR §35.108(d)(2)(iii)(K) [predictable assessments]; and see

*Butler, supra*; and see *Henrietta D., supra* [burden of proof]; and see #(1-2, 4-14, 19-22) Exhibits 1-2, 4-14, 19-22, supra; and see NYC Code §8–401

["certain forms of unlawful discrimination are systemic"]

22. The Plaintiff's TBI-caused disabilities were made more complicated by the sequelae of a severe viral infection in the initial phase of the pandemic before antiviral vaccines became available in March 2021; and this action was made urgent each time the agents of HRA/DSS/DHS and the agents of DHS contractors denied the Plaintiff's many requests for acknowledgement of the fact that that living with "Long COVID" is a recognized condition that may result in a disability. — see US Centers for disease Control (CDC), Living with Long COVID

https://www.cdc.gov/covid/long-term-effects/living-with-long-covid.html#:~:text=Di

d%20you%20know%3F,with%20Disabilities%20Act%20(ADA)


23. In the contexts established/alleged in paragraphs 1-22 above, this action has

been made urgent each time the agents of HRA/DSS/DHS and the agents of DHS

contractors denied the Plaintiff's many requests for post-pandemic accommodations to

be determined through interactive processes and "cooperative dialogue" per NYC

Administrative Code (NYC Code) §8-107(28)(b) ["unlawful discriminatory practice … to

refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time

with a person who has requested an accommodation"] — compare 28 CFR  §35.164

(1991); and see NYC Local Law No. 59 (2018) [cooperative dialogue]; and see NYC

Local Law No. 129 (2019) [retaliation for requesting cooperative dialogue]

> NYC Code §8-102.
>   Cooperative dialogue. The term "cooperative dialogue" means the process by
> which a covered entity and a person entitled to an accommodation, or who may
> be entitled to an accommodation under the law, engage in good faith in a
> written or oral dialogue concerning the person's accommodation needs;
> potential accommodations that may address the person's accommodation
> needs, including alternatives to a requested accommodation; and the difficulties
> that such potential accommodations may pose for the covered entity.


24. In the contexts established/alleged in paragraphs 1-23 above, the Plaintiff is a

qualified member of an array of independently created "protected class" groups of

people with medically documented disabilities, as are encompassed in the enacted

language of

> (a) federal law, including

> > (i) the RA, as amended; and

> > (ii) the HCDA; and

(iii) the Age Act, as amended; and

(iv) the CRRA; and

(v) the ADA, as amended; and

(vi) HIPPA, as amended; and

(iv) the ACA, as amended; and

(b) state law, including

(i) the NY Civil Rights Law (NY CVR), as amended; and

(ii) the NY Human Rights Law (NY HRL), as amended; and

(iii) the NY Constitution, Article I, §11; and

(c) municipal law, e.g., the NYC Human Rights Law (NYC HRL), as amended. — see ADA legislative history archived in Federal Depository microfiche set, SUDOC No. Y1.L11/4.S.HRG. 101-159, *supra*, especially the words of Sen. Kennedy ["_the combination of different … laws  … in order to achieve a public policy outcome_ …. I think we are entitled to have learned from past experience.  I think that is part of the legislative process.  *We have learned what has been effective*."] [emphasis added with *italics* and _underlining_]


25. In the contexts established/alleged in paragraphs 1-24 above, members of an RA-created "protected class" of litigants with disabilities, including the Plaintiff, have standing to seek relief, remedies and damages in this Court; and this is confirmed in

(a) the federal common law of contracts which has evolved in response to

(i) *Lau v. Nichols*, 414 U.S. 563 (1974); and

(ii) Section 120 of the Rehabilitation Act Amendments of 1978, Pub. L. 95-602, 92 Stat. 2982-2983 [PDF pp. 28-29 of 63]

https://www.aucd.org/docs/urc/DD%20Act/DD%20Act%20of%201978.pd

f; and in conjunction with

(b) the US Constitution, federal statutes and federal case law which has evolved over the course of decades, e.g.,

(i) in the 14th Amendment and the Ku Klux Klan Act; and

(ii) in *Goldberg v. Kelly*, 397 US 254, 267 (1970), citing *Armstrong v. Manzo*, 380 U. S. 545, 552 (1965), citing *Grannis v. Ordean*, 234 U. S. 385, 394 (1914), citing *Simon v. Craft, 182 US 427, 436* (1901) [essential elements of due process = "In determining  whether such *rights were denied* we are governed by *the substance of things, and not by mere form*"] [emphasis added with *italics* and underlining]; and

(iii) in the RA; and

(iv) in the HCDA; and

(v) in the Age Act; and

(vi) in the CRRA; and

(vii) in the ADA; and

(viii) in HIPPA; and

(ix) in the ACA, which amended the Social Security Act of 1935 (SSA), Pub. L. 74–271, 49 Stat. 620, thus encompassing the intentions of serial protective SSA edits which were enacted by multiple Congresses, e.g.,

(1) the 92nd Congress added SSA Sec. 1902(36), codified at 42 USC §1396a(a)(36) ["*compliance…  with … the statutory conditions of participation* imposed under this title"] — see Social Security Amendments of 1972, Pub. L. 92-603, 86 Stat. 1329

(2) the 90th Congress added SSA Sec. 1902(27), codified at 42 USC 1§1396a(a)(27) ["provide for agreements … *to keep such <u>records</u> as are necessary fully <u>to disclose the extent of the services provided to individuals receiving assistance</u> under the State plan*"] — see Social Security Amendments of 1967, Pub. L 90-248, 81 Stat. 821

(3) the 89th Congress added SSA Sec. 1902(19), codified at 42 USC §1396a(a)(19): "provide such *<u>safeguards</u>* as may be necessary to assure … the *<u>best interests of the recipients</u>*" [emphasis added with *italics* and *<u>underlining</u>*] — see Social Security Amendments of 1965, Pub. L. 89-97, 79 Stat. 286; and see *Bragdon v. Abbott*, 524 US 624, 645 (1998) [prior-construction doctrine]


26. In the "protected class" contexts established/alleged in paragraphs 1-25 above, the Plaintiff repeatedly tried to explain to anyone who would listen how and why pandemic sequelae affected TBI-caused executive function disabilities and how his communication disabilities affected his meaningful access to federally funded programs, including the federal Courts; and although the Plaintiff timely presented serial requests for accommodation, the gravamen of each and all were summarily denied in violation of 28 CFR §35-130 and 28 CFR §§35.160–35.164.


27. In the "protected class" contexts established/alleged in paragraphs 1-26 above, the Plaintiff was marginalized, distracted, delayed and blocked many times in many ways in his persisting attempts to seek timely and necessary accommodations for his

well-documented neurological and post-pandemic disabilities; and these barriers of

deliberate indifference were contrived by

    (a) HRA/DSS/DHS and its agents, including more than those who are here

    identified as named Defendants with personal liabilities; and

    (b) DHS contractor Acacia Network (Acacia) and its agents, including more than

    those who are here identified as named Defendants with personal liabilities; and

    (c) DHS contractor Community Housing Initiatives (CHI) and its agents,

    including more than those who are here identified as named Defendants with

    personal liabilities; and

    (d) the NYC Coalition for the Homeless (CFTH). — see see 28 CFR

    §35.108(d)(2)(iii)(K) [predictable assessments]; and see *Butler, supra*; and see

    *Henrietta D., supra* [burden of proof]; and see #(1-2, 4-14, 19-22) Exhibits

    1-2, 4-14, 19-22, supra


28. In the "protected class" contexts established/alleged in paragraphs 1-27 above,

the Plaintiff was unlawfully marginalized and blocked by HRA/DSS/DHS and its agents,

by Acacia and its agents, by CHI and its agents, and by CFTH and its agents — despite

the Plaintiff's repeated requests for compliance with DOJ regulations implementing the

ADA at 28 CFR part 35 — and at no time did HRA/DSS/DHS nor its agents nor Acacia

nor its agents nor CHI nor its agents nor CFTH nor its agents acknowledge or comply

28 CFR  §35.164
This subpart does not require a public entity to take any action that it can
demonstrate would result in a fundamental alteration in the nature of a service,
program, or activity or in undue financial and administrative burdens. In those
circumstances where personnel of the public entity believe that the proposed
action would fundamentally alter the service, program, or activity or would result
in undue financial and administrative burdens, *a public entity has the* <u>*burden of*</u>

*proving that compliance with this subpart* would result in such alteration or burdens. The *decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and* <u>*must be accompanied by a written statement of the reasons*</u> *for reaching that conclusion*. If an action required to comply with this subpart would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would *nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity*.

29. In the "protected class" contexts established/alleged in paragraphs 1-28 above, the Plaintiff timely sought accommodations he needed for meaningful access to programs which are funded in part with federal financial assistance; and also, the Plaintiff repeatedly argued in spoken words and in writing that the RA and ADA (not excluding 28 CFR §§35.130 and 28 CFR §§35.160-35.164) are mandatory, not precatory. — see #(1-14, 19-22) Exhibits 1-4, 19-22, supra; and see 56 FR 35594 (July 26, 1991) [Pursuant Executive Order 12250, RA-implementing prototype regulations were adapted by more than 80 federal agencies], accord 49 FR 35724-35725 (Sept. 11, 1984) [intentional parallelism]; and see *Bragdon, supra* [prior-construction doctrine]; and see *Tennessee v. Lane*, 541 US 509, 531 (2004). ["requirement of program accessibility, is congruent and proportional to its object of enforcing the right of access …. *The* <u>*unequal treatment*</u> *of disabled persons … has a long history, and has persisted* <u>*despite several legislative efforts to remedy the*</u> <u>*problem of disability discrimination. Faced with considerable evidence of the*</u> <u>*shortcomings of previous legislative responses,*</u> *Congress was justified in concluding that this 'difficult and intractable proble[m]' warranted 'added prophylactic measures in response*.'"] [emphasis added with *italics* and <u>*underlining*</u>]

30. In the "protected class" contexts established/alleged in paragraphs 1-29 above, the Plaintiff's appreciation of his peril was clarified and re-focused by the fatal stabbing of Robert Miller who died in the lobby of the DHS shelter at 1691 East New York Avenue in Brooklyn. — see "Worker stabbed to death outside Brooklyn homeless shelter" (Colin Mixon). *Daily News*.  December 27, 2024.

https://www.nydailynews.com/2024/12/27/worker-stabbed-death-outside-brooklyn-homeless-shelter

## C. Context re prolix patterns and practices

31. FRCP Rule 9 explains that claims of fraud must be pleaded with particularity; and therefore, this Court's conventional expectations FRCP Rule 8(a) are necessarily pushed aside by an exception per 28 USC §2074(b) which was developed by public entity Defendants and NYC contractors, acting independently and together; and the factors which are encompassed within the ambit of this FRCP exception are intermingled, e.g.,

(a) serial stand-alone contractual covenants binding all public entity Defendants to comply with the RA, the HCDA and the Age Act and federal regulations implementing the Acts, e.g.,

(i) HUD regulation at 24 CFR §8.4(b)(4)(i)-(iii) re RA; and  accord 24 CFR §6.4(a)(3)(iv)(B) re HCDA and the Age Act; and non-compliance violates NY UCC §2-313 [express warranty],

(ii) HUD regulation at 24 USC §8.56(k) re RA; and  accord 24 CFR §6.4(a)(3)(iv)(B) re HCDA and the Age Act; and accord NYC Code

§8-107.7 and NYC Code §8-107.19; and non-compliance violates NY UCC §2-313 [express warranty].

(iii) HHS regulation at 45 CFR §84.4(b)(4) re RA; and accord 45 CFR §92.101 re ACA; and non-compliance violates NY UCC §2-313 [express warranty].

(iv) HHS regulation at 45 CFR §84.61 re RA; and accord 45 CFR §92.101 re ACA; and accord NYC Code §8-107.7 and NYC Code §8-107.19; and non-compliance violates NY UCC §2-313 [express warranty].

(v) HHS regulation at 45 CFR §91.45 re the Age Act; and accord 45 CFR §92.101 re ACA; and accord NYC Code §8-107.7 and NYC Code §8-107.19; and non-compliance violates NY UCC §2-313 [express warranty]

(b) serial stand-alone contractual agreements binding all public entity Defendants to comply with Titles II and IV of the ADA and federal regulations implementing the Act, e.g.,

(i) 28 CFR §35.130(b)(3) [criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability]; and non-compliance violates NY UCC §2-313 [express warranty]

(ii) 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and non-compliance violates NY UCC §2-313 [express warranty]

(iii) 28 CFR §35.134(b) [interference with protected rights], accord NYC

Code §8-107.19 [interference with protected rights]; and non-compliance

violates NY UCC §2-313 [express warranty]

(c) serial denials of the Plaintiffs' accommodation requests which were

supported by the repeated citation of 28 CFR §35.130 and 28 CFR §35.164; and

(d) the barren documentary record of Defendants' compliance with the

requirements of 28 CFR §35.164; and

(e) the debilitating effects of many months of purposeful actions and inaction

which brazenly and cruelly intended to exacerbate the effects of the Plaintiff's

disabilities.  — see 28 CFR §35.108(d)(2)(iii)(K) [predictable assessments]; and

see *Butler, supra*; and see *Henrietta D., supra* [burden of proof]; and #(1-2,

4-14, 19-22) Exhibits 1-2, 4-14, 19-22, supra


32. In the patterns/practices contexts established/alleged in paragraphs 1-31 above,

this Preliminary Statement is necessary because Congress and regulations

implementing the RA, ADA and ACA have re-allocated conventional burdens of proof

and production to the public entity Defendants and NYC contractors, and thus, the

FRCP is changed by Congress per 28 USC §2074(b) to emphasize sanctioned

burden-shifting away from a *pro se* litigant with disabilities. — see 28 CFR

§35.108(d)(2)(iii)(K) [predictable assessments]; and see 28 CFR §35.164 [burden of

proof]; and see *Butler, supra*; and see *Henrietta D., supra* [burden of proof]; and see

28 CFR §35.101 [whether entities have complied with their obligations], accord NY

UCC §2-313 [express warranty]

33. In the patterns/practices contexts established/alleged in paragraphs 1-32 above, the Second Circuit has focused attention on asymmetric circumstances in which practical considerations and the interests of justice justify reallocating the conventional burdens of proof and production away from a Plaintiff with disabilities — burden-shifting to public entity Defendants and NYC contractors in conformity with

(a) the contractual administrative and anti-discrimination requirements accepted by each of the public entity Defendants and the NYC contractors as a pre-condition of serial stand-alone contracts which are an indissoluble component of the acceptance of  federal financial assistance; and

(b) the statutory and national anti-discrimination policy codified by the US Office of Management and Budget (OMB) at 2 CFR §200.300(a).  — see 28 CFR §35.108(d)(2)(iii)(K) [predictable assessments]; and see *Butler, supra*; and see *Henrietta D., supra* [burden of proof]

## D. Context re non-oversight patterns and practices

34. In the need for oversight contexts established/alleged in paragraphs 1-33 above, the patterns and practices of systemic unlawful discrimination by the public entity Defendants and the NYC contractors has eluded meaningful scrutiny for many years,

(a) despite the intentional frauds, errors and omissions in records documenting patterns and practices which target members of the "protected class" of people with disabilities, including the Plaintiff; and

(b) despite serial, redundant anti-discrimination covenants in NYC land records which document contractual agreements to comply with the cross-cutting

anti-discrimination mandates established by the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub. L. 97-35, 96 Stat 357. — see Olson, Theodore B., "Applicability of Certain Cross-Cutting Statutes to Block Grants Under the Omnibus Budget Reconciliation Act of 1981." Op. Off. Legal Counsel 83  (1982); and see DOI, "Compliance Risks … Oversight of Shelter Providers," *supra*; and see OSC, "Oversight," *supra*; and see NYC Code §8–401 ["certain forms of unlawful discrimination are systemic"]; and see *Simon, supra*  ["governed by the substance of things, and not by mere form"]

35. In the oversight contexts established/alleged in paragraphs 1-34 above, the scrutiny of this Court was made more urgent when voters authorized amending the NY Constitution in reaction to the too-often-futile anti-discrimination covenants in contractual agreements and the too-often-impotent laws enacted by serial US Congresses, serial NY legislatures and serial NYC City Councils, e.g.,

> NY Constitution, Article I, § 11. [Equal protection of laws; discrimination in civil rights prohibited]
> (a) *No person shall be denied the equal protection of the laws of this state or any subdivision thereof*. No person shall, because of race, color, ethnicity, national origin, *age*, *disability*, creed, religion, or sex, including sexual orientation, gender identity, gender expression, pregnancy, pregnancy outcomes, and reproductive healthcare and autonomy, be *subjected to any discrimination in their civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state, pursuant to law*.
> (b) Nothing in this section shall invalidate or prevent the adoption of any law, regulation, program, or practice that is designed to prevent or *dismantle discrimination on the basis of a characteristic listed in this section*, nor shall any characteristic listed in this section be interpreted to interfere with, limit, or deny the civil rights of any person based upon any other characteristic identified in this section. (New. Adopted by Constitutional Convention of 1938 and approved

28

by vote of the people November 8, 1938; amended by vote of the people November 6, 2001; amended by vote of the people November 5, 2024.) [emphasis added with *italics* and <u>underlining</u>]

36. In the oversight contexts established/alleged in paragraphs 1-35 above, it bears repeating for redundant emphasis that the life-changing accretion of harms and irreparable injuries caused by the systemic unlawful discrimination of public entity Defendants and NYC contractors remains today unacknowledged, despite laws which were enacted to ensure

(a) compliance record-keeping obligations made explicit for all recipients of federal financial assistance; and

(b) oversight enforcement record-keeping obligations made explicit for all non-federal pass-through sources and indirect recipients of federal financial assistance; and

(c) oversight enforcement obligations made explicit for all federal agency sources of federal funding streams.

**E. Context re audits and investigative reports**

37. In the need for audit/investigation contexts established/alleged in paragraphs 1-36 above, the persisting day-to-day reality of unlawful discrimination solely on the basis of disability in the activities of public entity Defendants and NYC contractors have been repeatedly documented and publicized by the office of the NYC Comptroller (NYC Comp), the NYC DOI and the NY OSC.

38.  In the need for audit/investigation contexts established/alleged in paragraphs 1-37 above, the investigative agendas and protocols of the NYC Comp, the NYC DOI and the NY OSC acknowledge only the harms and irreparable injuries suffered by some, not all, men and women in protected classes of persons with disabilities; and moreover, the serial reports of NYC Comp, the NYC DOI and the NY OSC exclude retaliation and other harms and irreparable damages which have been caused by public entity Defendants and the NYC contractors for the homeless  "protected class" of persons with disabilities, including the Plaintiff.

## F. Context re issues framed for US judges

39. In the contexts established/alleged in paragraphs 1-38 above, this prolix Preliminary Statement is necessary because of the unintended consequences created by federal bar Plaintiffs' lawyers who previously framed issues of discrimination based on disability, e.g., the Memorandum and Order drafted by US District Judge Sterling Johnson Jr. in *Henrietta D. v. Giuliani*, 119 F. Supp. 2d 181 (EDNY 2000); and compare first paragraph of the Amicus Brief of the United States in *Henrietta D. v. Giuliani*, 02-7022, 02-7074 (2nd Cir. 2002) https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/henrietta.pdf — see Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability]

40. In the contexts established/alleged in paragraphs 1-39 above, the continuing harms and irreparable damages suffered by the "protected class" of men and women

with disabilities provides compelling demonstrations of the mistakes and unintended consequences of the federal bar lawyers who previously framed anti-discrimination issues for judges of Second Circuit Court of Appeals, e.g., *Henrietta D. v Bloomberg, supra* — see Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability]

41. In the contexts established/alleged in paragraphs 1-40 above, the patterns and practices of the entrenched conspiracy of NYC agents and NYC contractors establish compelling demonstrations of the unintended consequences contrived by the federal bar lawyers who previously framed disability rights issues for decision-making by the judges of the Southern District of New York (SDNY) and the Eastern District of New York (EDNY), e.g., see *Butler, supra.*; and compare the predictably bad consequences of *Bagley v. NY Department of Health*, 15 CV 4845 (FB)(CLP) (EDNY May. 21, 2019) — see Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability]

## G. Context re *Butler* settlement

42. In the contexts established/alleged in paragraphs 1-41 above and the demonstrable bad faith of NYC in the *Butler* settlement, the bad faith gaslighting patterns and practices of systematic deliberate indifference by the public entity Defendants and NYC contractors and have been predictably overwhelming, confusing, disempowering and debilitating for the vulnerable Plaintiff, including the serial successes of the targeted barriers which blocked the process of researching, drafting

and submitting this Complaint. — see 28 CFR §35.108(d)(2)(iii)(K) [predictable assessments]; and see *Butler, supra*; and see *Henrietta D., supra* [burden of proof]; and see #(1-14, 19-22) Exhibits 1-14, 19-22, supra

43. In the contexts established/alleged in paragraphs 1-42 above and the day-to-day accretion of consequences caused by the many *Butler*-anticiplated incidents the Plaintiff was compelled to endure, the gravamen of his repeated and redundant pleas for acknowledgement and accommodations was always denied in violation of 28 CFR §35.164; and these serial incidents were each congruent with the unlawful discriminatory corporate culture which was distilled succinctly by Defendant Oyeniyi when he told the Plaintiff that Exhibit 1 and its supporting documentation in Exhibit 2 are "only for lawyers, nothing to do with us or what we do." — see NYC Code §8–401 ["certain forms of unlawful discrimination are systemic"]

44. In the *Butler*-anticipated contexts established/alleged in paragraphs 1-43 above, the documented record of deliberate indifference and heedless oversight establish a compelling exception to *stare decisis* otherwise based on the holding in *Cummings v. Premier Rehab Keller*, 596 U.S. ___, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022)

45. In the *Butler*-anticipated contexts established/alleged in paragraphs 1-44 above, the scienter of the public entity Defendants and NYC contractors, acting independently and together — and the personal liability of specific named Defendants in this action — is made meaningful in the program acceusss mandates which have been enacted in

the RA, the Age Act, the ADA, HIPPA, the ACA, the NY Constitution, the NY CVR, the

NY HRL, and the NYC HRL. — see *Cummings, supra*.


## H. Context re NYC and HRA/DSS/DHS


46. In the contexts established/alleged in paragraphs 1-45 above, this action seeks a

declaratory judgment that Defendant NYC — and especially its HRA/DSS/DHSagency

— is unfit to be a continuing recipient of federal funding streams because of recurring

bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious

bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] in a

context of federal financial assistance misused in concurrent bad faith violation of 42

USC §12134(b) [criteria or methods of administration] and the EFTA and NY GBL and

the NY UCC. — see *Loeffler v. Staten Island Univ. Hosp*, 582 F3d 268, 275 (2nd Cir.

2009) ["intentional discrimination may be inferred when a "policymaker acted with at

least deliberate indifference to the strong likelihood that a violation of federally

protected rights will result"]*,* citing Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39

(9th Cir. 2001) [deliberate indifference = "knowledge that a harm to a federally

protected right is substantially likely, and a failure to act"]


47. In the contexts established/alleged in paragraphs 1-46 above, this action seeks an

injunctive order requiring that all anti-discrimination covenants in federal contract

agreements with NYC and HRA/DSS/DHS shall be strictly enforced to the fullest extent

anticipated by the prolix, repetitive and purposefully redundant administrative

requirements which are contractually accepted by recipients of multiple federal

funding streams — in other words, he Plaintiff seeks for NYC, HRA/DSS/DHS and its

NYC and its contractors  to be held accountable in ways

> (a) initially framed in the 1970s by lawyers of the US Department of Health,
>
> Education and Welfare (HEW); and
>
> (b) subsequently refined by the lawyers of 80+ federal agencies; and
>
> (c) mirrored in federal regulations implementing the CRRA; and
>
> (d) mirrored in DOJ regulations implementing the ADA; and
>
> (d) mirrored in HHS regulations implementing the ACA .


48. In the contexts established/alleged in paragraphs 1-47 above, this action seeks a

declaratory judgment that the too-big-to-fail Defendant Acacia Network (Acacia) is

unfit to receive federal financial assistance as an HRA/DSS/DHS contractor because of

recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and

pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere with civil

rights] in a context of federal financial assistance misused in concurrent bad faith

violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA

and NY GBL.


49. In the contexts established/alleged in paragraphs 1-48 above, this action seeks a

declaratory judgment that Defendant Community Housing Initiatives (CHI) is unfit to

receive federal financial assistance as an HRA/DSS/DHS contractor because of

recurring bad faith violation of 42 USC §1986 [action for neglect to prevent] and

pernicious bad faith violation of 42 USC §1985 [conspiracy to interfere with civil

rights] — including targeted barriers which blocked the docketing of this Complaint —

in a context of federal financial assistance misused in concurrent bad faith violation of

42 USC §12134(b) [criteria or methods of administration].


50. In the contexts established/alleged in paragraphs 1-49 above, this action seeks an

injunctive order requiring that all anti-discrimination covenants and other elements of

each of the many federal contractual agreements affecting NYC, HRA/DSS/DHS,

Acacia and CHI shall be reviewed and rewritten to reflect the amended NY

Constitution, Article I, §11(b) [dismantle discrimination on the basis of disability]


## I. Context re *Singleton*


51. In the contexts established/alleged in paragraphs 1-50 above, the patterns of

facts and law docketed at ECF No. 1 in *Singleton et al. v. Clean Rite Centers, LLC*,

1:24-cv-06454 (2024 EDNY) need to be recited anew in this Preliminary Statement.


52. The commonalities with *Singleton* function only as an underlying foundation for

this action; and this is because the systemic misuse of undisclosed federal funding is

not encompassed within the ambit of the class action Complaint which has been

docketed in the US District Court in Brooklyn.


53. In *Singleton*, the docketed words help the Plaintiff to overcome his neurological

disabilities in order to parse the baseline facts and law in the complicated

Acacia/Clean Rite scam  scheme, e.g.,

(a) Laundry Capital Co. LLC, doing business as Clean Rite Centers (Clean Rite) provides reloadable Laundry Cards or "access devices," as defined at 12 CFR §1005.2; and these cards are configured only for use in laundry machines that are also provided by and serviced by Defendant Clean Rite.

(b) A class action lawsuit became necessary for customers/users to seek redress for Clean Rite's practice of misrepresenting the value of these Laundry Cards.

(c) For the general public customer/users, the Laundry Cards can be purchased and refilled _only_ at a Clean Rite's point-of-sale (POS) "electronic terminal," as defined at 12 CFR §1005.2; however, there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff, who are unlawfully entangled in fraud made possible with federal financial assistance.

(d) For the general public customer/users, the Laundry Cards include unfair and deceptive conditions that are only revealed to customers/users after the point of sale, or never revealed at all; and the hidden class of Acacia/Clean Rite scam victims, including the Plaintiff, are unlawfully entangled in the unfair and deceptive conditions.

(e) For the general public customer/users, a new Laundry Card can _only_ be purchased from a POS terminal for $3; however, there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff.

(f) For the general public customer/users, the Laundry Card can be refilled using either cash or credit card but the POS terminal does not accept coins.

(g) For the general public customer/users, credit cards can only be used to add money in certain increments; however, there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff.

(h) For the general public customer/users, the Laundry Cards can be filled with up to $80 at a time.

(i) Clean Rite charges various fees for different size washers and dryers; and these numbers are subject to change at Clean Rite's whim.

(j) Neither $80 nor the increments that can be added to the Laundry Cards are divisible by the washer/drier use fees.

(k) The implication of the possible prepayment amounts in conjunction with the price of laundry means that it is essentially guaranteed that the balance of a laundry card will never reach zero.

(l) For the general public customer/users, the Laundry Cards are non-refundable; however, there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff.

(m) For the general public customer/users, Clean Rite does not reveal the non-refundability of the residual or remainder balances until after a customer/user has already committed to purchasing a Laundry Card; and there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff.

(n) For the general public customer/users, the possible refill amounts are not random; and they are calculated to always produce a remainder which Clean Rite then keeps; and there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff, for whom the Laundry Cards are designed to always produce a remainder which is unlawfully confiscated in a fraud made possible with federal financial assistance.

(o) For the general public customer/users, the remaining balances are thus unavailable to Laundry Card users and function as a hidden fee that is not

disclosed to customers and users; and there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff.

(p) For the general public customer/users, the refund policy, in conjunction with Clean Rite's policies that result in users occasionally needing to purchase new cards cause Clean Rite customers to accumulate countless Laundry Cards with balances that are all inaccessible; and there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff.

(q) Even after the POS purchase, Clean Rite does not reveal that the combination of its policies, the possible refill amounts, and the price of the laundry leads to inaccessible remainder balances on the Laundry Cards.

(s) For the general public customer/users, the Clean Rite patterns and practices which produce residual or remainder balances that Clean Rite keeps are not disclosed — and these small unused money amounts add up over time; and there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff, who are unlawfully entangled in fraud made possible with federal financial assistance.

(t) For the general public customer/users, the deceptive patterns and practices of Clean Rite's Laundry Cards concurrently contravene the EFTA and NY GBL §396-i; and there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff.

(u) For the general public customer/users, Defendant Clean Rite's patterns and practices of unjust enrichment violate the EFTA and NY GBL §§349-350; and there is also a hidden class of Acacia/Clean Rite scam victims, including the Plaintiff.

54. Unlike other consumers/users in the class identified in the *Singleton* Complaint, the entanglement of the Plaintiff in the Acacia/Clean Rite scam was involuntary — it was caused solely by public entity compulsion; and for the Plaintiff, the adverse consequences were exacerbated by a conspiracy of unlawful discrimination, including retaliation, which evolved over time in recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — in a context of federal financial assistance misused in concurrent bad faith violation of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and NY GBL.

55. In the contexts established/alleged in paragraphs 1-54 above, the unlawful conspiracy combined with the misuse of federal dollars expands the Gordian knot of fraud beyond the framework identified by the lawyers who drafted the *Singleton* Complaint, including targeted barriers which blocked the docketing of this Complaint.

## J. Context re compelled entanglement in fraud

56. The Plaintiff was conscientious in studying notices about Clean Rite which were posted on the walls of the Acacia Network's homeless shelter for elderly men at the corner of East New York Avenue and Dean Street in the Brownsville neighborhood of Brooklyn. — see #(3) Exhibit 13, supra.

57. In response to what the Plaintiff read, he went to the Clean Rite Center on Eastern Parkway in Brownsville in order to inspect the washing machines and dryers; and the Plaintiff's 45-year history of living with dyscalculia and nonverbal learning disabilities caused

(a) an intense risk averse reaction — and perversely, his post-pandemic aphasia blocked his urgent desire to parse the perceived "danger" with words; and

(b) an intense sense of validity — and despite the aphasia, his sense of being on "high alert" was perceived/self-defined as highly credible because

(i) any perceived sense of certainty is so rare that it's only  happened less than five times in 45 years; and

(ii) previous rare, intense risk averse reactions have always proven to be both accurate and prescient; and

(c) a tentative defensive decision to wash clothes in the shower while continuing to search for more and/or better clarification data and/or words.


58. After washing clothes by hand for several months, Defendant Davis and an unknown DHS inspector surprised/ambushed the Plaintiff with a new DHS rule prohibiting his long-standing clothes=washing-the=shower routine; and the Plaintiff was told the exclusive use of Clean Rite to wash clothes was now defined by DHS and Acacia as the Plaintiff's only option going forward; and no questions were permitted or answered.


59. Some weeks later, Defendant Davis and Defendant Amelyanchyk surprised/ambushed the Plaintiff with a new DHS rule prohibiting his  the supply of

lifelong use of Tide laundry detergent; and on the same day, Defendant Abdullah informed the Plaintiff that laundry soap provided by Acacia often ran out, and in such circumstances, Clean Rite sold single-wash laundry packets.

60. The Plaintiff and other shelter "clients" were systematically required to provide Acacia with a signature documenting receipt of a $10 laundry card; and then, each "client" was systematically required to surrender any unused or remaining digital cash sum on the card for Acacia to recover at a Bronx program at 915 Westchester Avenue in the Bronx which is funded in part with federal financial assistance from the NYC Department of Health and Mental Health (DOHMH)

61. The $10 Acacia/Clean Rite scam laundry card amount was sometimes insufficient for the Plaintiff's needs in winter; and so, in order to dry what had been washed, the Plaintiff was compelled to buy another Clean Rite laundry card.

62. The Acacia/DHS-compelled purchase of another laundry card caused the Plaintiff to become one of the many victims who are encompassed within the *Singleton* class action; and his questions produced escalating agitation and anger.

63. The Acacia/Clean Rite fraud compels vulnerable DHS "client" victims, including the Plaintiff, to document acceptance of digital cash dollars; and then, the shelter staff aggressively demands the "voluntary" and undocumented surrender of all or part of these digital cash dollars in violation of "rights" posted in notices on the shelter hallway walls; and nothing about this is encompassed within the purview of NYC Comp

auditors, nor NYC DOI investigators tasked with oversight of Acacia's federally-funded activities, nor the Callahan inspections organized by the NYC Coalition for the Homeless (CFTH); and in this perverse scenario,

(a) the victimized protected class of people with disabilities like the Plaintiff are purposefully manipulated in ways which emphasize powerlessness and isolation; and

(b) the digital cash dollars which the Plaintiff's signature confirms were received by him are subsequently confiscated — stolen — by compulsion imposed by people who function as agents of the NYC government; and

(c) the recurring residual digital cash value in the laundry cards is a systematic funding stream which generates undisclosed profits for the Acacia/Clean Rite fraud; and

(d) no one is held accountable by any federal funding source oversight nor by NYC for the parasitic predation enabled by unlawful discrimination.

64. The Acacia/Clean Rite scam is not encompassed within the purview of NY OSC auditors; and no one is held accountable by any federal funding source oversight nor by NY for the parasitic predation enabled by unlawful discrimination.

## H. Context re NYC and DOHMH

65. In the contexts established/alleged in paragraphs 1-64 above, this action seeks a declaratory judgment that Defendant NYC — and especially its DOHMH agency — is unfit to be a continuing recipient of federal funding streams because of its

participation in the Acacia/Clean Rite scam and its bad faith violations of 42 USC

§1986 [action for neglect to prevent] and its underlying bad faith violations of 42 USC

§1985 [conspiracy to interfere with civil rights] — including targeted barriers which

blocked the drafting, submission and docketing of this Complaint — in a context of

federal financial assistance misused in concurrent bad faith violations of 42 USC

§12134(b) [criteria or methods of administration] and the EFTA and NY GBL.


66. In the contexts established/alleged in paragraphs 1-65 above, this action seeks an

injunctive order requiring that all anti-discrimination covenants in federal contract

agreements with NYC and DOHMH shall be strictly enforced to the fullest extent

anticipated by the prolix, repetitive and purposefully redundant administrative

requirements which are contractually accepted by recipients of federal dollars — in

other words, that NYC and its contractors be held accountable in ways

> (a) initially framed in the 1970s by lawyers of the US Department of Health,
> Education and Welfare (HEW); and

> (b) subsequently refined by lawyers of 80+ federal agencies. —  see 56 FR
> 35594 (July 26, 1991) [more than 80 federal agencies]; and

> (c) mirrored in federal regulations implementing the CRRA; and

> (d) mirrored in DOJ regulations implementing the ADA; and

> (d) mirrored in HHS regulations implementing the ACA.


67. In the contexts established/alleged in paragraphs 1-66 above, this action seeks a

declaratory judgment that Defendant Acacia is unfit to receive federal financial

assistance as a DOHMH contractor because of recurring bad faith violations of 42 USC

§1986 [action for neglect to prevent] and pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the drafting, submission and docketing of this Complaint — in a context of federal financial assistance misused in concurrent bad faith violation of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and NY GBL and the NY UCC.

68. In the contexts established/alleged in paragraphs 1-67 above, this action seeks an injunctive order requiring that all anti-discrimination covenants and other elements of each of the many federal contractual agreements affecting NYC's DOHMH and Defendant Acacia shall be reviewed and rewritten to reflect the amended NY Constitution, Article I, §11(b) [dismantle discrimination on the basis of disability]

## K. Context re OBRA, CRRA, ACA and SAA

69. The Acacia/Clean Rite scam in the Bronx, which is within the geographic area of the US District Court for the Southern District of New York (SDNY), targets vulnerable elderly victims with disabilities like the Plaintiff in Brooklyn, which within the geographic area of the US District Court for the Eastern District of New York (EDNY); and this predatory parasite scheme is encompassed within the the ani-discrimination ambits of OBRA and CRRA; however, at the same time, the complex fraud has remained outside protocols of predictable oversight by

    (a) anyone at HRA/DSS/DHS; and/or

    (b) the NYC Comp auditors; and/or

(c) the NYC DOI investigators.

70. The Acacia/Clean Rite scam in the Bronx was organized to encompass an undisclosed Certified Community Behavioral Health Clinic (CCBHC) as an integral element of "services" provided at a homeless shelter many miles away from a geographically-limited Bronx "community"; and this fraud is encompassed within the the anti-discrimination ambits of of OBRA and CRRA while, at the same time,  it remains outside protocols of oversight by

    (a) the very large NY bureaucracy, including

        (i) the NY Office of Mental Health (OMH); and/or

        (ii) the NY OSC auditors; and/or

    (b) the very large NYC bureaucracy, including

        (i) the NYC DOHMH; and/or

        (ii) the NYC Comp auditors; and/or

        (iii) the NYC DOI investigators.

71. The Acacia/Clean Rite scam is intermingled with patterns and practices of unlawful discrimination based solely on disability; and per OBRA and CRRA, the Acacia program in the Bronx is functionally indistinguishable from the unlawful activities which target the vulnerable Plaintiff in Brooklyn; and accordingly, the bad faith scam in which all the Defendants are complicit in one way or another demonstrates that the Plaintiff's need for relief and remedy from this Court is anticipated within

    (a) the anti-discrimination mandates of Section 1557 of the ACA, codified at 42 USC §18116; and

(b) the protective safety net of the well-settled SSA focus on individual men and women who are vulnerable in the context of a bureaucracy-focused system, e.g., 42 USC §1396a(a)(36) [statutory conditions of participation], including 42 USC 1§1396a(a)(27) [records] and 42 USC §1396a(a)(19) [safeguards].

## L. Context re NYC CFTH

72. The NYC CFTH accepts federal financial assistance in order to to empower an advocacy voice in a process of change for a protected class of homeless people with disabilities who have scant or no meaningful recourse or remedy for systemic unlawful discriminatory actions and inaction, despite the legislative intentions enacted in the words of the RA, the CRRA, the ADA, the NY CVR, the NY HRL, HIPPA, the ACA and Article I, §11 of the NY Constitution.

73.  The Plaintiff seeks a declaratory judgement documenting that, in 2024-2025, Defendant CFTH has created a record of scant or no meaningful effect for the protected class of homeless men and women with disabilities and contexts of unlawful discrimination like those identified in this action, including the Acacia/Clean Rite scam.

74. The Plaintiff seeks injunctive relief which requires Defendant CFTH to develop a Court-approved plan which anticipates timely and meaningful CFTH interventions in future contexts of unlawful discrimination like those identified in this action, including affirmative and prophylactic compliance with 28 CFR §35-130 and 28 CFR §§35.160–35.164

**H. Context re NY and DOH**

75. In the contexts established/alleged in paragraphs 1-74 above, this action seeks a declaratory judgment that Defendant NY, and especially its Department of Health (DOH), is unfit to be a continuing recipient of federal funding streams because of its participation in the Acacia/Clean Rite scam and its bad faith violations of 42 USC §1986 [action for neglect to prevent] and its underlying bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] in a context of federal financial assistance misused in concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and NY GBL.

76. In the contexts established/alleged in paragraphs 1-75 above, this action seeks an injunctive order requiring that all anti-discrimination covenants in federal contract agreements with DOH shall be strictly enforced to the fullest extent anticipated by the prolix, repetitive and purposefully redundant administrative requirements which are contractually accepted by recipients of federal dollars — in other words, that NYC and its contractors be held accountable in ways

    (a) initially framed in the 1970s by lawyers of the US Department of Health, Education and Welfare (HEW); and

    (b) subsequently refined by lawyers of 80+ federal agencies. —  see 56 FR 35594 (July 26, 1991) [more than 80 federal agencies]; and

    (c) mirrored in federal regulations implementing the CRRA; and

    (d) mirrored in DOJ regulations implementing the ADA; and

(d) mirrored in HHS regulations implementing the ACA.

77. In the contexts established/alleged in paragraphs 1-76 above, this action seeks a declaratory judgment that Defendant Acacia is unfit to receive federal financial assistance from DOH because of recurring bad faith violation of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violation of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the research, drafting and submission of this Complaint about the Acacia/Clean Rite scam — in a context of federal financial assistance misused in concurrent bad faith violation of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and NY GBL and the NY UCC. — see paragraph 18 above, citing 81 FR 53225, 53227 (Aug. 11, 2016); and see 28 CFR §35.108(d)(2)(iii)(K) [predictable assessments]; and see *Butler, supra*; and see *Henrietta D., supra* [burden of proof]

78. In the contexts established/alleged in paragraphs 1-77 above, this action seeks an injunctive order requiring that all anti-discrimination covenants and other elements of each of the many federal contractual agreements affecting NY's DOH and Defendants Acacia shall be reviewed and rewritten to reflect the amended NY Constitution, Article I, §11(b) [dismantle discrimination on the basis of disability]

**M. Context re NY and OSC**

79. The NY OSC was established by the NY Constitution; and the ambit of OSC audit/oversight purview includes acknowledgement and documentation of federal contract non-compliance with the RA, the CRRA, the ADA, the NY CVR, the NY HRL, HIPPA, the ACA and Article I, §11 of the NY Constitution.

80.  The Plaintiff seeks a declaratory judgement documenting that, in 2024-2025, Defendant OSC has created a record of scant or no meaningful effect for the protected class of homeless men and women with disabilities and contexts of unlawful discrimination like those identified in this action

81. The Plaintiff seeks injunctive relief which requires Defendant OSC to develop a Court-approved plan which projects timely and meaningful OSC audit recognition/documentation in future contexts of unlawful discrimination like those identified in this action, including affirmative and prophylactic compliance with 28 CFR §35-130 and 28 CFR §§35.160–35.164  — see Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability]

## M. Context re NY and CDO

82. The NY CDO was established by the NY Governor in order to empower an advocacy voice in a process of change for a protected class of people with disabilities who have scant or no meaningful recourse or remedy for systemic unlawful discriminatory actions and inaction, despite the legislative intentions enacted in the

words of the RA, the CRRA, the ADA, the NY CVR, the NY HRL, HIPPA, the ACA and Article I, §11 of the NY Constitution.

83.  The Plaintiff seeks a declaratory judgement documenting that, in 2024-2025, Defendant CDO has created a record of scant or no meaningful effect for the protected class of homeless men and women with disabilities and contexts of unlawful discrimination like those identified in this action — see Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability]

84. The Plaintiff seeks injunctive relief which requires Defendant CDO to develop a Court-approved plan which anticipates timely and meaningful CDO interventions in future contexts of unlawful discrimination like those identified in this action, including affirmative and prophylactic compliance with 28 CFR §35-130 and 28 CFR §§35.160–35.164  — see Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability]

## JURISDICTION

85. This Court has jurisdiction over civil actions based on the Constitution and laws of the United States pursuant to 28 USC §1331

86. This Court has jurisdiction to secure equitable or other relief under any Act of Congress providing for the protection of civil rights pursuant to 28 USC §1343 and FRCP Rule 65 [injunction or restraining order].

87. This Court has jurisdiction to issue declaratory judgments pursuant to 28 USC §2201(a)-(b) and 28 USC §2202 and FRCP Rule 57 [declaratory judgment]

88. This Court has jurisdiction under the NYC HRL as codified at NYC Code §8–502(a).

**VENUE**

89. Venue is proper in the Eastern District of New York (EDNY), pursuant to 28 USC §1391(b), because the address of the homeless shelter where Plaintiff sleeps is 1691 East New York Avenue, Brooklyn, New York

90. Venue is proper in the Southern District of New York (SDNY), pursuant to 28 USC §1391(b), because the Plaintiff's tenancy at 531 Main Street on Roosevelt Island has not been legally terminated – pursuant covenants recorded in property records for the land parcel in New York County at Block 1373, Lot 40; and also,

91. Each of the Defendants has government or business addresses within EDNY and SDNY.

92. Venue is proper in this Court, pursuant

    (a) Title I, §120(a) of the Rehabilitation Act Amendments of 1978 at 92 Stat. 2982-2983; and

(b) the property records in New York County at Block 1373, Lot 40 which document express prohibitions against the unlawful discriminatory actions and inaction of agents, contractors and subcontractors of NYC and NY, which have each accepted of federal financial assistance which is entailed with express covenants which enforce the statutory and national anti-discrimination policies and laws including the Civil Rights Restoration Act of 1987 (CRRA), Pub. L. 100-259, 102 Stat. 28..

93. Venue is proper in this Court pursuant the Housing and Community Development Act of 1974, (HCDA) Pub. L. 93-383, 88 Stat. 633 which amended the United States Housing Act of 1937, Pub L 75-896, 50 Stat 888; and this is because this federal law defines the Plaintiff as the surviving member of an elderly/disabled tenant family at 24 CFR §570.3, incorporating 24 CFR §5.403(iii)(2)(vi); and legally relevant anti-discrimination covenants binding NYC as the owner of the land and NY as the long-term lessor of the land and the co-op building constructed with federal financial assistance are recorded in property records for the land parcel in New York County at Block 1373.

**PARTIES**

94. The Plaintiff is an elderly person with disabilities who has been unlawfully targeted and victimized by public entity Defendants and NYC contractor Defendants and Defendant Clean Rite; moreover, he has been compelled to suffer extreme hardship and elder abuse despite

(a) redundant safety net systems which have proven to be ineffective;

(b) redundant protections and prohibitions enacted in serial federal, state and municipal laws have proven to be futile.   `

95. In the contexts established/alleged in paragraphs 1-84 and 94 above, NYC is named as a Defendant; and NYC is a necessary party because of leadership decisions which enabled a corporate culture of deliberate indifference to systemic unlawful discrimination based on disability, including

(a) systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,

(i) violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.166; and

(ii) violations of Title IV of the ADA per 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and

(iii) violations of Title IV of the ADA per 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and

(b) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g.,

(i) violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

(ii) violations of 24 USC §8.56(k) [retaliation], accord NYC Code §8-107.7

[retaliation] and NYC Code §8-107.19 [interference with protected rights].

(c) systemic nullification of affirmative and prophylactic contractual obligations

of a recipient of federal funding from HHS, as were made explicit in regulations

implementing the RA, e.g.,

(i) violations of 45 CFR §84.4(b)(4) [criteria or methods of

administration]; and

(ii) violations of 45 CFR §84.61 [retaliation], accord NYC Code §8-107.7

[retaliation] and NYC Code §8-107.19 [interference with protected rights];

and

(d) systemic nullification of affirmative and prophylactic contractual obligations

of a recipient of ACA-enacted funding streams, encompassing procedural SSA

protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36)

[compliance with the "statutory conditions of participation"] and 42 USC

1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the

extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as

may be necessary to assure … the best interests of the recipients"]


96. In the contexts established/alleged in paragraphs 1-84 and 94-95 above, NYC is

responsible for flawed leadership in a corporate culture of systemic unlawful

discrimination based solely on disability; and therefore, NYC has made itself a

proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

(a) 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted

barriers which blocked the docketing of this Complaint — by agents of NYC and

agents of NYC contractors; and

(b) 42 USC §1986 [action for neglect to prevent].

97. In the contexts established/alleged in paragraphs 1-84 and 94-96 above, the

Plaintiff asks this Court to assess compensatory, statutory, and special/punitive

damages against Defendant NYC because of its corporate culture of deliberate

indifference to the strong likelihood of a violation of federally protected rights caused

by systemic unlawful discrimination; and this is the kind of issue which is anticipated

by NY UCC §2-313 [express warranty] and Article I, §11(b) of the NY Constitution

[dismantle discrimination on the basis of disability].

98. In the contexts established/alleged in paragraphs 1-84 and 94-97 above, Michelle

Morse is named as a Defendant in her official capacity as NYC Chief Medical Officer

(CMO), functioning as an agent of a public entity as defined in Article II of the ADA,

and functioning as an agent of a non-federal entity accepting federal financial

assistance, as defined in the SSA, the RA, the Age Act and the ACA.

99. In the contexts established/alleged in paragraphs 1-84 and 94-98 above, Molly

Park is named as a Defendant in her official capacity as Commissioner of NYC

HRA/DSS/DHS; and she is a necessary party because of leadership decisions which

enabled a corporate culture of deliberate indifference to systemic unlawful

discrimination based on disability, including

(a) systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,

> (i) violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.166; and

> (ii) violations of Title IV of the ADA per 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and

> (iii) violations of Title IV of the ADA per 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and

(b) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g.,

> (i) violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

> (ii) violations of 24 USC §8.56(k) [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights].

(c) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HHS, as were made explicit in regulations implementing the RA, e.g.,

> (i) violations of 45 CFR §84.4(b)(4) [criteria or methods of administration]; and

(ii) violations of 45 CFR §84.61 [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and

(d) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of ACA-enacted funding streams, encompassing procedural SSA protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36) [compliance with the "statutory conditions of participation"] and 42 USC 1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as may be necessary to assure … the best interests of the recipients"]

100. In the contexts established/alleged in paragraph 1-84 and 94-99 above, Defendant Park is responsible for flawed leadership in a corporate culture of systemic unlawful discrimination based solely on disability; and therefore, in her official capacity, she has made herself a proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

(a) violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — by agents of HRA/DSS/DHS and agents of NYC contractors; and

(b) violations of 42 USC §1986 [action for neglect to prevent].

101. In the contexts established/alleged in paragraphs 1-84 and 94-100 above, the Plaintiff asks this Court to assess compensatory, statutory, and special/punitive damages against Defendant NYC because of the actions and inaction of Defendant

Park, including her deliberate indifference to the strong likelihood of a violation of federally protected rights caused by systemic unlawful discrimination; and this is the kind of issue which is anticipated by NY UCC §2-313 [express warranty] and Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability].

102. In the contexts established/alleged in paragraphs 1-84 and 94-101 above, Defendant John Hammond has affirmatively made himself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights]  — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

103. In the contexts established/alleged in paragraphs 1-84 and 94-102 above, Aboiodun Oyeniyi has affirmatively made himself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

104. In the contexts established/alleged in paragraphs 1-84 and 94-103 above, Defendant Rose Nantango, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of

this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

105. In the contexts established/alleged in paragraphs 1-84 and 94-104 above, Defendant Eve Cleghorn, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

106. In the contexts established/alleged in paragraphs 1-84 and 94-105 above, Defendant Lydia Picker, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

107. In the contexts established/alleged in paragraphs 1-84 and 94-106 above, Defendant Akim Norville has affirmatively made himself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

108. In the contexts established/alleged in paragraphs 1-84 and 94-107 above, Defendant Victor Amelyanchyk has affirmatively made himself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent], including targeted barriers which blocked the docketing of this Complaint; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

109. In the contexts established/alleged in paragraphs 1-84 and 94-108 above, Michelle Morse is named as a Defendant in her official capacity as Commissioner of NYC DOHM; and she is a necessary party because of leadership decisions which enabled a corporate culture of deliberate indifference to systemic unlawful discrimination based on disability, including

(a) systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,

(i) violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.166; and

(ii) violations of Title IV of the ADA per 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and

(iii) violations of Title IV of the ADA per 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and

(b) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g.,

    (i) violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

    (ii) violations of 24 USC §8.56(k) [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights].

(c) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HHS, as were made explicit in regulations implementing the RA, e.g.,

    (i) violations of 45 CFR §84.4(b)(4) [criteria or methods of administration]; and

    (ii) violations of 45 CFR §84.61 [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and

(d) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of ACA-enacted funding streams, encompassing procedural SSA protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36) [compliance with the "statutory conditions of participation"] and 42 USC 1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as may be necessary to assure … the best interests of the recipients"].

110. In the contexts established/alleged in paragraphs 1-84 and 94-109 above, Defendant Morse is responsible for flawed leadership in a corporate culture of systemic unlawful discrimination based solely on disability; and therefore, in her official capacity, she has made herself a proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

> (a) violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint; and

> (b) violations of 42 USC §1986 [action for neglect to prevent].

111. In the contexts established/alleged in paragraphs 1-84 and 94-110 above, the Plaintiff asks this Court to assess compensatory, statutory, and special/punitive damages against Defendant NYC because of the actions and inaction of Defendant Morse, including her deliberate indifference to the strong likelihood of a violation of federally protected rights caused by systemic unlawful discrimination; and this is the kind of issue which is anticipated by NY UCC §2-313 [express warranty] and Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability].

112. In the contexts established/alleged in paragraphs 1-84 and 94-111 above, Lynmaris Albors is named as a Defendant in her official capacity as head of an NYC contractor — Acacia Network (Acacia); and she is a necessary party because of leadership decisions which enabled a corporate culture of deliberate indifference to systemic unlawful discrimination based on disability, including

> (a) systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,

(i) violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.166; and

(ii) violations of Title IV of the ADA per 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and

(iii) violations of Title IV of the ADA per 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and

(b) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g.,

(i) violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

(ii) violations of 24 USC §8.56(k) [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights].

(c) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HHS, as were made explicit in regulations implementing the RA, e.g.,

(i) violations of 45 CFR §84.4(b)(4) [criteria or methods of administration]; and

(ii) violations of 45 CFR §84.61 [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and

(d) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of ACA-enacted funding streams, encompassing procedural SSA protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36) [compliance with the "statutory conditions of participation"] and 42 USC 1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as may be necessary to assure … the best interests of the recipients"]

113. In the contexts established/alleged in paragraph 1-84 and 94-112 above, Defendant Albors is responsible for flawed leadership in a corporate culture of systemic unlawful discrimination based solely on disability; and therefore, in her official capacity, she has made herself a proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

(a) 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — by agents of Acacia; and

(b) 42 USC §1986 [action for neglect to prevent].

114. In the contexts established/alleged in paragraphs 1-84 and 94-113 above, the Plaintiff asks this Court to assess compensatory, statutory, and special/punitive damages against Defendant Acacia because of the actions and inaction of Defendant Albors, including her deliberate indifference to the strong likelihood of a violation of federally protected rights caused by systemic unlawful discrimination; and this is the

kind of issue which is anticipated by NY UCC §2-313 [express warranty] and Article I,

§11(b) of the NY Constitution [dismantle discrimination on the basis of disability].


115. In the contexts established/alleged in paragraphs 1-84 and 94-114 above,

Defendant Albors has affirmatively made herself personally liable for the harms and

irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with

civil rights]  — including targeted barriers which blocked the docketing of this

Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks

compensatory, statutory, and special/punitive damages.


116. In the contexts established/alleged in paragraphs 1-84 and 94-115 above,

Defendant Gabriella Gonzales has affirmatively made herself personally liable for the

harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to

interfere with civil rights] — including targeted barriers which blocked the docketing of

this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff

seeks compensatory, statutory, and special/punitive damages.


117. In the contexts established/alleged in paragraphs 1-84 and 94-116 above,

Defendant Sana Campbell-Gilmore, has affirmatively made herself personally liable for

the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy

to interfere with civil rights] — including targeted barriers which blocked the docketing

of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the

Plaintiff seeks compensatory, statutory, and special/punitive damages.

118. In the contexts established/alleged in paragraphs 1-84 and 94-117 above, Defendant Cleavon Jenkins, has affirmatively made himself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

119. In the contexts established/alleged in paragraphs 1-84 and 94-118 above, Defendant Cotandra Davis, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

120. In the contexts established/alleged in paragraphs 1-84 and 94-119 above, Defendant Jane Doe1/Correa has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

121. In the contexts established/alleged in paragraphs 1-84 and 94-120 above, Defendant Jane Doe2/Bostick has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to

interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

122. In the contexts established/alleged in paragraphs 1-84 and 94-121 above, Defendant Angela Goddard has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights]  — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

123. In the contexts established/alleged in paragraphs 1-84 and 92-122 above, Defendant Valerie Cook, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

124. In the contexts established/alleged in paragraphs 1-84 and 94-123 above, Defendant Ernesto Meyers, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

125. In the contexts established/alleged in paragraphs 1-84 and 94-124 above, Defendant Lila Montenez, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

126. In the contexts established/alleged in paragraphs 1-84 and 94-125 above, Defendant Tiffany Teague, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

127. In the contexts established/alleged in paragraphs 1-84 and 94-126 above, Defendant Jane Doe3/Everett, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

128. In the contexts established/alleged in paragraphs 1-84 and 94-127 above, Defendant Andrea Watkins, has affirmatively made herself personally liable for the

harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

129. In the contexts established/alleged in paragraphs 1-84 and 94-128 above, Defendant Rise Abdullah, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

130. In the contexts established/alleged in paragraphs 1-84 and 94-129 above, Defendant Angela Brent, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

131. In the contexts established/alleged in paragraphs 1-85 and 95-130 above, Ron Abad is named as a Defendant in his official capacity as head of an NYC contractor — Community Housing Innovations (CHI); and heshe is a necessary party because of leadership decisions which enabled a corporate culture of deliberate indifference to systemic unlawful discrimination based on disability, including

(a) systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,

> (i) violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.166; and

> (ii) violations of Title IV of the ADA per 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and

> (iii) violations of Title IV of the ADA per 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and

(b) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g.,

> (i) violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

> (ii) violations of 24 USC §8.56(k) [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights].

(c) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HHS, as were made explicit in regulations implementing the RA, e.g.,

> (i) violations of 45 CFR §84.4(b)(4) [criteria or methods of administration]; and

(ii) violations of 45 CFR §84.61 [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and

(d) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of ACA-enacted funding streams, encompassing procedural SSA protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36) [compliance with the "statutory conditions of participation"] and 42 USC 1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as may be necessary to assure … the best interests of the recipients"]

132. In the contexts established/alleged in paragraphs 1-84 and 94-131 above, Defendant Abad is responsible for flawed leadership in a corporate culture of systemic unlawful discrimination based solely on disability; and therefore, in his official capacity, he has made himself a proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

(a) 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — by agents of DHS, Acacia and CHI; and

(b) 42 USC §1986 [action for neglect to prevent].

133. In the contexts established/alleged in paragraphs 1-84 and 94-132 above, the Plaintiff asks this Court to assess compensatory, statutory, and special/punitive damages against Defendant CHI because of the actions and inaction of Defendant

Abad, including her deliberate indifference to the strong likelihood of a violation of federally protected rights caused by systemic unlawful discrimination; and this is the kind of issue which is anticipated by NY UCC §2-313 [express warranty] and Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability].

134. In the contexts established/alleged in paragraphs 1-84 and 94-133 above, Defendant Richard Lewis, has affirmatively made himself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

135. In the contexts established/alleged in paragraphs 1-84 and 94-134 above, Defendant Claudette Phipps, has affirmatively made herself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and 42 USC §1986 [action for neglect to prevent], including targeted barriers which blocked the docketing of this Complaint; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

136. In the contexts established/alleged in paragraphs 1-84 and 94-135 above, Defendant Earl Holder, has affirmatively made himself personally liable for the harms and irreparable injuries caused by violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this

Complaint — and 42 USC §1986 [action for neglect to prevent]; and the Plaintiff seeks compensatory, statutory, and special/punitive damages.

137. In the contexts established/alleged in paragraphs 1-84 and 94-136 above, Clean Rite Centers (Clean Rite) is named as a Defendant because of its central role in a business fraud which entangled the Plaintiff in more than one way; and the Plaintiff suffered harms and irreparable injuries because of the cover-up conspiracy of recurring bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — and pernicious bad faith violations of 42 USC §1986 [action for neglect to prevent] in a perverse context of federal financial assistance misused in a complicated concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and NY GBL.

138. In the contexts established/alleged in paragraphs 1-84 and 94-137 above, David Giffin is named as a Defendant in his official capacity as the Executive Director of the NYC Coalition for the Homeless (CFTH); and he she is a necessary party because of leadership decisions which enabled a corporate culture of deliberate indifference to systemic unlawful discrimination based on disability, including

   (a) systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,  violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.164; and

(b) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g., violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

(c) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HHS, as were made explicit in regulations implementing the RA, e.g., violations of 45 CFR §84.4(b)(4) [criteria or methods of administration]; and

(d) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of ACA-enacted funding streams, encompassing procedural SSA protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36) [compliance with the "statutory conditions of participation"] and 42 USC 1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as may be necessary to assure … the best interests of the recipients"]


139. In the contexts established/alleged in paragraphs 1-84 and 94-138 above, Defendant Giffin is responsible for flawed leadership in a corporate culture of systemic unlawful discrimination based solely on disability; and therefore, in his official capacity, he has made himself a proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

(a) 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — by agents of DHS, Acacia and CHI; and

(b) 42 USC §1986 [action for neglect to prevent].

140. In the contexts established/alleged in paragraphs 1-84 and 94-139 above, the Plaintiff asks this Court to assess compensatory, statutory, and special/punitive damages against Defendant CFTH because of the actions and inaction of Defendant Giffin, including her deliberate indifference to the strong likelihood of a violation of federally protected rights caused by systemic unlawful discrimination; and this is the kind of issue which is anticipated by NY UCC §2-313 [express warranty] and Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability].

141. In the contexts established/alleged in paragraphs 1-84 and 94-140 above, NY is named as a Defendant; and NY is a necessary party because of leadership decisions which enabled a corporate culture of deliberate indifference to systemic unlawful discrimination based on disability, including

(a) systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,

(i) violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.166; and

(ii) violations of Title IV of the ADA per 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and

(iii) violations of Title IV of the ADA per 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and

(b) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g.,

> (i) violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

> (ii) violations of 24 USC §8.56(k) [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights].

(c) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HHS, as were made explicit in regulations implementing the RA, e.g.,

> (i) violations of 45 CFR §84.4(b)(4) [criteria or methods of administration]; and

> (ii) violations of 45 CFR §84.61 [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and

(d) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of ACA-enacted funding streams, encompassing procedural SSA protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36) [compliance with the "statutory conditions of participation"] and 42 USC 1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as may be necessary to assure … the best interests of the recipients"].

142. In the contexts established/alleged in paragraphs 1-84 and 94-141 above, Defendant NY is responsible for flawed leadership in a corporate culture of systemic unlawful discrimination based solely on disability; and therefore, NY has made itself a proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

> (a) 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint — by public entity Defendants audited by OSC and agents of public entities and by non-federal, non-public entities accepting federal financial assistance from pass-through sources of federal dollars; and

> (b) 42 USC §1986 [action for neglect to prevent].

143. In the contexts established/alleged in paragraphs 1-84 and 94-142 above, Plaintiff asks this Court to assess compensatory, statutory, and special/punitive damages against Defendant NY because of its corporate culture of deliberate indifference to the strong likelihood of a violation of federally protected rights caused by systemic unlawful discrimination; and this is the kind of issue which is anticipated by NY UCC §2-313 [express warranty] and Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability].

144. In the contexts established/alleged in paragraphs 1-84 and 94-143 above, James McDonald is named as a Defendant in his official capacity as Commissioner of NY Department of Health (DOH); and he is a necessary party because of leadership decisions which enabled a corporate culture of deliberate indifference to systemic unlawful discrimination based on disability, including

(a) systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,

> (i) violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.166; and

> (ii) violations of Title IV of the ADA per 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and

> (iii) violations of Title IV of the ADA per 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and

(b) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g.,

> (i) violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

> (ii) violations of 24 USC §8.56(k) [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights].

(c) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HHS, as were made explicit in regulations implementing the RA, e.g.,

> (i) violations of 45 CFR §84.4(b)(4) [criteria or methods of administration]; and

(ii) violations of 45 CFR §84.61 [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and

(d) systemic nullification of affirmative and prophylactic contractual obligations of a recipient of ACA-enacted funding streams, encompassing procedural SSA protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36) [compliance with the "statutory conditions of participation"] and 42 USC 1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as may be necessary to assure … the best interests of the recipients"].

145. In the contexts established/alleged in paragraphs 1-84 and 94-144 above, Defendant McDonald is responsible for flawed leadership in a corporate culture of systemic unlawful discrimination based solely on disability; and therefore, in his official capacity, he has made himself a proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

(a) violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint; and

(b) violations of 42 USC §1986 [action for neglect to prevent].

146. In the contexts established/alleged in paragraphs 1-84 and 94-145above, the Plaintiff asks this Court to assess compensatory, statutory, and special/punitive damages against Defendant NY because of the actions and inaction of Defendant Johnson, including his deliberate indifference to the strong likelihood of a violation of

federally protected rights caused by systemic unlawful discrimination; and this is the kind of issue which is anticipated by NY UCC §2-313 [express warranty] and Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability].

147. In the contexts established/alleged in paragraphs 1-85 and 94-146 above, Thomas DiNapoli is named as a Defendant in his official capacity as the elected NY State Comptroller and head of an NY Office of the State Comptroller (OSC); and he is a necessary party because of leadership decisions which enabled an audit/investigation/oversight culture of deliberate indifference to systemic unlawful discrimination based on disability, including

(a) audit/investigation/oversight indifference to systemic nullification of affirmative and prophylactic statutory duties of a public entity, e.g.,

(i) violations of Title II of the ADA per 28 CFR §35.130(b)(3) [criteria or methods of administration] — including life-altering violations of 28 CFR §35.130, 28 CFR §35.160 and CFR §35.166; and

(ii) violations of Title IV of the ADA per 28 CFR §35.134(a) [retaliation], accord NYC Code §8-107.7 [retaliation]; and

(iii) violations of Title IV of the ADA per 28 CFR §35.134(b) [interference with protected rights], accord NYC Code §8-107.19 [interference with protected rights]; and

(b) audit/investigation/oversight indifference to systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HUD, as were made explicit in regulations implementing the RA, e.g.,

(i) violations of 24 CFR §8.4(b)(4) [criteria or methods of administration]; and

(ii) violations of 24 USC §8.56(k) [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights].

(c) audit/investigation/oversight indifference to systemic nullification of affirmative and prophylactic contractual obligations of a recipient of federal funding from HHS, as were made explicit in regulations implementing the RA, e.g.,

(i) violations of 45 CFR §84.4(b)(4) [criteria or methods of administration]; and

(ii) violations of 45 CFR §84.61 [retaliation], accord NYC Code §8-107.7 [retaliation] and NYC Code §8-107.19 [interference with protected rights]; and

(d) audit/investigation/oversight indifference to systemic nullification of affirmative and prophylactic contractual obligations of a recipient of ACA-enacted funding streams, encompassing procedural SSA protections enacted by multiple Congresses, e.g., 42 USC §1396a(a)(36) [compliance with the "statutory conditions of participation"] and 42 USC 1§1396a(a)(27) ["to keep such records as are necessary fully to disclose the extent of the services provided"] and 42 USC §1396a(a)(19) ["safeguards as may be necessary to assure … the best interests of the recipients"].

148. In the contexts established/alleged in paragraphs 1-84 and 94-147 above, Defendant DiNapoli is responsible for flawed leadership in an audit culture which

enables systemic unlawful discrimination based solely on disability; and therefore, in his official capacity, he has made himself a proximate cause of harms and irreparable injuries to the Plaintiff, e.g.,

(a) violations of 42 USC §1985 [conspiracy to interfere with civil rights] — including targeted barriers which blocked the docketing of this Complaint; and

(b) violations of 42 USC §1986 [action for neglect to prevent].

149. In the contexts established/alleged in paragraphs 1-84 and 94-148 above, the Plaintiff asks this Court to assess compensatory, statutory, and special/punitive damages against Defendant NY because of the actions and inaction of Defendant DiNapoli, including his responsibility for OSC's audit/investigation/oversight indifference to the strong likelihood of a violation of federally protected rights caused by systemic unlawful discrimination; and this is the kind of issue which is anticipated by NY UCC §2-313 [express warranty] and Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability].

150. In the contexts established/alleged in paragraphs 1-84 and 94-149 above, Kimberly Hill is named as a Defendant in her official capacity as the appointed NY State Chief Disability Officer (CDO) and head of an NY Office of the CDO ; and she is a necessary party because of 2025 amendment to the NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

151. In the contexts established/alleged in paragraphs 1-84 and 94-150 above, an affirmative and prophylactic role for Defendant Hill is arguably anticipated by the NY

legislation which established the Office of the CDO; however, the record of Defendant

Hill's actions across many months documents only indifference and no

acknowledgement of the strong likelihood of a violation of federally protected rights

caused by systemic unlawful discrimination nor other categories of related issues

identified in this action; however, the inclusion of the CDO in this action — see NY

Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability];

and the involvement of the CDO in this action provides a potentially constructive tool

for this Court to use in fulfilling the US Constitution's Supremacy Clause mandate.


## CAUSES OF ACTION


**COUNT I**

**Violation of 42 USC §12134, 28 CFR §35.130(b)(3), 24 CFR §8.4(b)(4), 45**

**CFR §84.4(b)(4), NY UCC §2-313 + 28 CFR §35.164**


152. The Plaintiff incorporates by reference and re-alleges herein all paragraphs

above.


153. The underlying foundation of this action is a conspiracy of well-settled custom or

usage with the force of law in purposeful contravention of the US Constitution, the RA,

the HCDA, the Age Act, the CRRA, the ADA, HIPPA, the ACA, the NY Constitution, the

NY HRL, and the NYC HRL; and the Defendants' conspiracy encompasses all named

public entities and their agents and contractors and Defendant Clean Rite in

contravention the necessary mandates of 42 USC §12134 [criteria or methods of

administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability] and 28 CFR §35.130(b)(3)

;  and this conspiracy violates regulations implementing the RA at 24 CFR §8.4(b)(4) [criteria or methods of administration] and 45 CFR §84.4(b)(4) [criteria or methods of administration]; moreover, the conspiracy of purposeful administrative nullification violates NY UCC §2-313 [express warranty] in multiple, redundant ways for each of the named public entity Defendants, their agents and their contractors per 42 USC §18116. — see *Butler, supra*; and see *Henrietta D., supra* at 278 [FRCP is "designed such that a party will not bear the burden of proof … when the evidence needed is not typically within the party's control"]

154. The proofs established/alleged in paragraphs 1-84 and 94-151 and 152-153 above are documented in records which each public entity recipient or sub-recipient of federal financial assistance is required to maintain. — see *Butler, supra*; and see *Henrietta D., supra.*

155. Face-to-face, the Plaintiff asked more than once for an interactive process for determining needed accommodations because of his neurological and post-pandemic disabilities; and he repeatedly cited 28 CFR §35.164 in support of his requests; and at the same time, regardless of whatever the Plaintiff did or didn't say, the statutory and contractual duty of acknowledgement and action mandated for each public entity Defendant and NYC contractor was an express warranty which had been established *a priori* in contract agreements; and these contract covenants also mandated accurate record-keeping which provides documentary support for the allegations in paragraphs

1-84 and 94-151 and 152-154 above. — see *Butler, supra*; and see *Henrietta D., supra.*

156. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–155 above, the Plaintiff asked each of the following for timely action in compliance with 28 CFR §35.164; and each refused to provide the Plaintiff with the responsive follow-up the regulation requires and the Plaintiff needed; and the Plaintiff's bad experiences encompassed "bad apple" public servants

    (a) DHS agents: Victor Amelyanchyk, Akim Norville, Lydia Picker, Rose Nantango and others not herein named; and

    (b) Acacia agents: Sana Campbell-Gilmore, Cleavon Jenkins, Cotandra Davis, Jane Doe1/Correa, Jane Doe2/Bostick, Angel Goddard, Valerie Cook, Ernesto Meyers, Lila Montanez, Tiffany Teague, Jane Doe2/Everett, Andrea Watkins, Rise Abdullah, Angela Brent and others not herein named; and

    (c) CHI agents: Richard Lewis, Claudette Phepps, Earl Holder and others not herein named; and

    (d) CFTH agents: Tammy Kirton-Smith, Jane Doe4, Andrew Murano, Rachel Noel, Christine Nieves, Brandon Melendez, Jane Doe5, Jane Doe6, Jane Doe7 and others not herein named.  — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

157. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–156 above, the words and conduct of many men and women in  organizationally distinct

bureaucracies made congruent decisions to nullify 28 CFR §35.164; and yet, there was nothing the Plaintiff could do except to seek relief and remedy in this Court. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

157. The uniform baselines of the Plaintiff's experiences with public servants whose salaries are each, in part, supported by federal dollars is compelling evidence of an otherwise unacknowledged conspiracy of well-settled custom or usage with the force of law; and each co-conspirator is a participant in a commonly understood plan to nullify disability rights laws; however, the Plaintiff and this Court are excluded from whatever baseline agreement there is which unites the conspirators in conspiracy; and this unlawful baseline ensures that the Plaintiff's  program access is denied; and yet, there was nothing the Plaintiff could do except to seek relief and remedy in this Court. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

## COUNT II

## Violation of 42 USC §12203, 24 USC §8.56(k), 45 CFR §84.61, NYC Code §8-107.7, NYC Code §8-107.19, NY UCC §2-313

158. The Plaintiff incorporates by reference and re-alleges herein all paragraphs above.

159. The contexts of deliberate indifference and nullification which have been established/alleged in paragraphs 1-84 and 94-151 and 152–158 above were contrived by men and women, acting individually and together as agents of government; and the personal liability of each man or woman became specific many times when each acted affirmatively to exacerbate the effects of the Plaintiff's disabilities in retaliation for his robust assertion of program access rights which are protected in the the US Constitution, the RA, the HCDA, the Age Act, the CRRA, the ADA, HIPPA, the ACA, the NY Constitution, the NY HRL, and the NYC HRL; and some of the Defendants did this to the Plaintiff for fun. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

160. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–159 above, the personal liability of agents of NYC and its contractors became specific many times when each man or woman acted independently and together to exacerbate the Plaintiff's disabilities for the purpose of blocking, confusing and delaying the Plaintiff's persisting efforts — including targeted barriers which blocked the research, drafting and submitting of this Complaint; and yet, there was nothing the Plaintiff could do except to seek relief and remedy in this Court. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

161. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–160 above, the Plaintiff's experiences of unlawful discrimination, fraud and retaliation were

orchestrated by the Defendants' conspiracy of well-settled custom or usage with the force of law; and these bad experiences encompassed "bad apple" public servants

    (a) DHS agents: Victor Amelyanchyk, Akim Norville, Lydia Picker, Eve Cleghhorn, Rose Nantango, Abiodun Oyeniyi, John Hammond, and others not herein named; and

    (b) Acacia agents: Lynmaris Albors, Gabriela Gonzalez, Sana Campbell-Gilmore, Cleavon Jenkins, Cotandra Davis, Jane Doe1/Correa, Jane Doe2/Bostick, Angel Goddard, Valerie Cook, Ernesto Meyers, Lila Montanez, Tiffany Teague, Jane Doe2/Everett, Andrea Watkins, Rise Abdullah, Angela Brent and others not herein named; and

    (c) CHI agents: Richard Lewis, Claudette Phipps, Phoebe Ervin, Louis Marcelin, Colville Lewis, Earl Holder and others not herein named. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

162. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–161 above,  the Plaintiff's experiences of unlawful discrimination, fraud and retaliation were orchestrated by the Defendants' conspiracy of well-settled custom or usage with the force of law; and this was successful in establishing an overwhelmingly hostile work environment, encompassing

    (a) misconduct that creates an environment that a reasonable person would find hostile or abusive; and

(b) the Plaintiff's oft-expressed statements explaining that he subjectively perceives the co-conspirators' misconduct as hostile, abusive and unlawful discrimination based on disability; and

(c) the Plaintiff's oft-expressed statements that the co-conspirators created the hostile/abusive environment because of his disabilities and his protected class.

— see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]


163. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–162 above, the Plaintiff attempted to ensure the creation of records in which DHS, Acacia, CHI and others will have created contemporaneous, redundantly validating and reinforcing documentation of more than one unlawful discriminatory incident which was extraordinarily severe, and also documentation of a series of incidents that were sufficiently continuous and concerted to have altered the conditions of the work environment which the Plaintiff needs in order to access the program and services funded in part with federal financial assistance — denying the program access which DHS, Acacia and CHI have contracted to provide; and this documentary record of unlawful intimidation and retaliation encompasses,

(a) May 2024, as documented in the records of DHS and Acacia; and

(b) July 2024, as documented in the records of DHS and Acacia; and

(c) August 2024, as documented in the records of DHS, Acacia, HUD, HPD, and the DHS Ombudsman; and

(d) November 2024, as documented in the records of DHS, Acacia, DHS Ombudsman, NYC City Council Member Sandy Nurse (CM Nurse) and the NYC Public Advocate (NYCPA); and

(e) January-February 2025, as documented in the records of DHS, Acacia, Dr. Victoria Mock, CM Nurse and CFTH; and

(f) March 2025, as documented in the records of DHS, Acacia, Dr. Victoria Mock, CM Nurse and CFTH; and

(g) March-April 2025, as documented in the records of DHS, Acacia, HUD, HPD, the NYC Housing Authority (NYCHA), the Jewish Association Serving the Aging (JASA), CM Nurse and CFTH; and

(h) May 2025, as documented in the records of DHS and Acacia. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

164. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–163 above, the Plaintiff attempted to ensure the creation of records in which DHS, Acacia, CHI and others will have contemporaneous, redundantly validating and reinforcing documentation which confirms the existence of a hostile work environment as defined by the totality of the circumstances, including the frequency of unlawful discriminatory misconduct, its severity and how it unreasonably interfered with the Plaintiff's ability to access the program and services funded in part with federal financial assistance — denying the program access which DHS, Acacia and CHI have contracted to provide; and this documentary record of unlawful intimidation and retaliation encompasses,

(a) May 2024, as documented in the records of DHS and Acacia; and

(b) July 2024, as documented in the records of DHS and Acacia; and

(c) August 2024, as documented in the records of DHS, Acacia, HUD, HPD, and the DHS Ombudsman; and

(d) November 2024, as documented in the records of DHS, Acacia, DHS Ombudsman, NYC City Council Member Sandy Nurse (CM Nurse) and the NYC Public Advocate (NYCPA); and

(e) January-February 2025, as documented in the records of DHS, Acacia, Dr. Victoria Mock, CM Nurse and CFTH; and

(f) March 2025, as documented in the records of DHS, Acacia, Dr. Victoria Mock, CM Nurse and CFTH; and

(g) March-April 2025, as documented in the records of DHS, Acacia, HUD, HPD, the NYC Housing Authority (NYCHA), the Jewish Association Serving the Aging (JASA), CM Nurse and CFTH; and

(h) May 2025, as documented in the records of DHS and Acacia; and

(i) May-June 2025,, as documented in the records of DHS, Acacia and CHI. ; and see Article I, §11(b) of the NY Constitution [dismantle discrimination on the basis of disability]. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

**COUNT III**

**Violation of 42 USC §1986**

165. The Plaintiff incorporates by reference and re-alleges herein all paragraphs above.

166. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–165 above, each of the public entity Defendants and NYC contractors have privileged access to data which is unavailable/unknown to the Plaintiff, and the information solely within the control of the Defendants confirms the existence of conspiracies of well-settled custom or usage with the force of law which effectively nullify federal, state and municipal disability rights laws; and at the same time, all of the public entity Defendants and NYC contractors will have been contractually obligated to create independent documentary records which are evidence of their deliberate indifference to unlawful custom or usage which effectively undermines the effectiveness of disability rights laws protecting the Plaintiff; and yet, there was nothing the Plaintiff could do except to seek relief and remedy in this Court. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

167. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–166 above, all the public entity Defendants, their agents, NYC contractor Defendants and their agents and Clean Rite, acting individually and together, designed, orchestrated and maintained a conspiracy focused on blocking the Plaintiff's access to programs and services funded in part with federal financial assistance — denying the program access which DHS, Acacia and CHI have contracted to provide; and the Defendants' conspiracy focused on serial barriers intended to block the Plaintiff's persisting efforts

across 9+ months to draft, edit and submit this Complaint about the Acacia/Clean Rite

scam. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at

Article I, §11(b) [dismantle discrimination on the basis of disability]

168. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–167

above, the named Defendants below, acting individually and together, violated 42 USC

§1986 by failing to act in a meaningful way to disrupt an/or bring and end to the

conspiracy which targeted the Plaintiff's Constitutionally protrctred access to the

federal judiciary; and in specific, the Defendants' unlawful discriminatory misconduct

targeted the Plaintiff's vulnerable abilities to research, draft, edit and submit this

Complaint; and the Plaintiff's bad experiences encompassed "bad apple" public

servants:

(a) DHS agents: Victor Amelyanchyk, Akim Norville, Lydia Picker, Eve Cleghhorn,

Rose Nantango, Abiodun Oyeniyi, John Hammond, and others not known to the

Plaintiff; and

(b) Acacia agents:  Lynmaris Albors, Gabriela Gonzalez, Sana Campbell-Gilmore,

Cleavon Jenkins, Cotandra Davis, Jane Doe1/Correa, Jane Doe2/Bostick, Angel

Goddard, Valerie Cook, Ernesto Meyers, Lila Montanez, Tiffany Teague, Jane

Doe2/Everett, Andrea Watkins, Rise Abdullah, Angela Brent and others not

known to the Plaintiff; and

(c) CHI agents: Richard Lewis, Claudette Phipps, Earl Holder and others not

known to the Plaintiff.  — see *Butler, supra*; and see *Henrietta D., supra*; and

see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of

disability]

**COUNT III**

**Violation of 42 USC §1985**

169. The Plaintiff incorporates by reference and re-alleges herein all paragraphs above.

170. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–169 above, all the public entity Defendants, their agents, NYC contractor Defendants and their agents, acting individually and together, violated 42 USC §1985 to exacerbate the Plaintiff's disabilities for the purpose of blocking, confusing and delaying his persisting attempts to seek relief, including his right to research, draft and submit this Complaint about the Acacia/Clean Rite scam in the US District Court.  — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

171. In the contexts established/alleged in paragraphs 1-84 and 94-151 and 152–170 above, the named Defendants below violated 42 USC §1985 by affirmative actions and inactions which exacerbae the disabilities of a vulnerable, elderly man in order to block his access to the US District Court; and these experiences encompassed "bad apple" public servants

    (a) DHS agents: Victor Amelyanchyk, Akim Norville, Lydia Picker, Eve Cleghhorn, Rose Nantango, Abiodun Oyeniyi, John Hammond, and others not herein named; and

(b) Acacia agents:  Lynmaris Albors, Gabriela Gonzalez, Sana Campbell-Gilmore, Cleavon Jenkins, Cotandra Davis, Jane Doe1/Correa, Jane Doe2/Bostick, Angel Goddard, Valerie Cook, Ernesto Meyers, Lila Montanez, Tiffany Teague, Jane Doe2/Everett, Andrea Watkins, Rise Abdullah, Angela Brent and others not herein named; and

(c) CHI agents: Richard Lewis, Claudette Phepps, Earl Holder and others not herein named.   — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]


**Count IV**

**Violation of 15 USC §1693 *et seq*.**


172. The Plaintiff incorporates by reference and re-alleges herein all paragraphs above.


173. The primary objective of the Electronic Fund Transfer Act ("EFTA"), 15 USC §1693 is to protect consumer rights by providing a basic framework establishing the rights, liabilities, and responsibilities of participants in the electronic fund and remittance transfer systems; and the Plaintiff is defined as a "consumer" at 15 USC §1693a(6).


174. Defendant Clean Rite is a financial institution as defined by 15 USC §1693(a)(9), and 12 CFR §1005.2(a)(2)(i), because this for-profit entity directly or indirectly

(a) holds accounts belonging to consumers; and/or

(b) issues an access device to consumers.

175. Defendant Clean Rite's Laundry Cards are accounts pursuant to 15 USC §1693(a)(2) and 12 CFR §1005.3.

176. Defendant Clean Rite's Laundry Cards are store gift cards pursuant to 15 USC §16931-1(2), and 12 CFR §1005.20, because they are issued to consumers for personal, family, or household purposes and are redeemable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo.

177. Defendant Clean Rite markets the Laundry Cards to the general public by promoting the cards on the internet.

178. Defendant Clean Rite violated 15 USC §16931-1 and 12 CFR §1005.20 by charging service fees in the form of remainder balances that are not clearly and conspicuously described on the store gift card.

179. Each time money is added to the Clean Rite Laundry Card, a remainder balance is generated that constitutes a fee; and the amount of this fee is not disclosed prior to purchase or at any other point.

180. Defendant Clean Rite's violations of the EFTA have caused and continue to cause injury to the Plaintiff as an un-named participant in the *Singleton* class action; and, in

the contexts established/alleged in paragraphs 51-78 and 151-179 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was unlawfully entangled in fraud made possible with federal financial assistance and NY/NYC government compulsion intermingled with violations of federal, state and local disability rights laws. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

181. In the contexts of EFTA violations established/alleged in paragraphs 51-78 and 151–180 above, the Plaintiff seeks to enjoin the unlawful acts and practices described herein and to recover damages, as well as reasonable attorneys' fees and costs pursuant to 15 USC §1693(m)(a)(3) and any other just and proper relief to be determined by the Court.

**COUNT V**

**Violation of NY GBL §349**

182. The Plaintiff incorporates by reference and re-alleges herein all paragraphs above.

183. For the general public customer/users, Defendant Clean Rite's representations in the marketing of its Laundry Cards violate the NY General Business Law (GBL) §349 which prohibits unfair or deceptive acts and practices; and, in the contexts established/alleged in paragraphs 51-78 and 151-182 above, there is also a hidden

class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was unlawfully entangled in fraud made possible with federal financial assistance and NY/NYC government compulsion intermingled with violations of  federal, state and local disability rights laws. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

184. For the general public customer/users, Defendant Clean Rite's  deceptive business practices are prohibited by the EFTA and NY law; and, in the contexts established/alleged in paragraphs 51-78 and 151-183 above, the Acacia/Clean Rite scam's deceptive business practices are prohibited by's  EFTA and NY law intermingled with violations of  federal, state and local disability rights laws. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

185. For the general public customer/users, Defendant Clean Rite's Clean Rite's deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the policy of structuring the possible prepayment amount and refund policies in a way as to maximize the unusable balances in the Laundry Cards and, in this way, to increase the systematic residue revenue in each card; and, in the contexts established/alleged in paragraphs 51-78 and 151-184 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded in a way as to maximize the unusable balances in the Laundry Cards and, in this way, to increase the systematic residue

revenue garnered by the scam. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

186. For the general public customer/users, Defendant Clean Rite's misconduct is misleading in a material way because it fails to comport with GBL §396-i(c)(3), in that Defendant Clean Rite does not clearly and conspicuously disclose its deceptive and unfair policies; and, in the contexts established/alleged in paragraphs 51-78 and 151-185 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded because the scam does not disclose its deceptive and unfair policies in violation of GBL §396-i(c)(3) intermingled with violations of  federal, state and local disability rights laws. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

187. For the general public customer/users, Defendant Clean Rite's misconduct is misleading in a material way because it violates GBL §396-i(5-b), in that Defendants' policies to not allow Laundry Cards with a remaining value of less than five dollars to be redeemed upon request for its cash value; and, in the contexts established/alleged in paragraphs 51-78 and 151-186 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded because the scam not allow Laundry Cards with a remaining value of less than five dollars to be redeemed upon request for its cash value in violation of GBL §396-i(5-b) intermingled with violations of  federal, state and local disability rights

laws. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

188. The Plaintiff seeks to enjoin the unlawful acts and practices described herein and to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and any other just and proper relief to be determined by the Court.

**COUNT VI**

**Violation of NY GBL §350**

189. The Plaintiff incorporates by reference and re-alleges herein all paragraphs above.

190. For the general public customer/users, Defendant Clean Rite violates the NY General Business Law (GBL) §350 which provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful"; and, in the contexts established/alleged in paragraphs 51-78 and 151-189 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded by the scam's adoption of Clean Rite's advertising in the conduct of its business and in the furnishing of  the scam's "service" in violation of GBL §350 intermingled with violations of  federal, state and local disability rights laws. — see

*Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I,

§11(b) [dismantle discrimination on the basis of disability]

191. For the general public customer/users, Defendant Clean Rite's misconduct with

Laundry Cards is false and misleading in a material way because Clean Rite

fundamentally misrepresents the policy of structuring the possible prepayment

amount and refund policies in a way as to maximize the unusable balances in the

Laundry Cards and, in this way, to increase the systematic residue revenue in each

card; and, in the contexts established/alleged in paragraphs 51-78 and 151-190

above, there is a hidden class of Acacia/Clean Rite scam victims, including the

vulnerable, elderly Plaintiff with disabilities; and he was was defrauded in a way as to

maximize the unusable balances in the Laundry Cards and, in this way, to increase the

systematic residue revenue garnered by the scam. — see *Butler, supra*; and see

*Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle

discrimination on the basis of disability]

192. For the general public customer/users, Defendant Clean Rite's misconduct with

Laundry Cards is false and misleading in a material way because it contravenes GBL

§396-i(c)(3), in that Defendant does not clearly and conspicuously disclose its

deceptive and unfair policies; and, in the contexts established/alleged in paragraphs

51-78 and 151-191 above, there is a hidden class of Acacia/Clean Rite scam victims,

including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded in

that the scam did not disclose its deceptive and unfair policies in violation of GBL

§396-i(c)(3) intermingled with violations of  federal, state and local disability rights

laws. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

193. For the general public customer/users, Defendant Clean Rite's misconduct with Laundry Cards is misleading in a material way because it fails to comport with New York's General Business Law § 396-i(5-b), in that Defendants' policies to not allow Laundry Cards with a remaining value of less than five dollars to be redeemed upon request for its cash value; and, in the contexts established/alleged in paragraphs 51-78 and 151-192 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded by the scam's refusal even to talk about why it does not  allow Laundry Cards with a remaining value of less than five dollars to be redeemed upon request for its cash value in violation of GBL §396-i(5-b) intermingled with violations of  federal, state and local disability rights laws. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

194. For the general public customer/users, reasonable men and women were not made aware of Defendant Clean Rite's policies, and this misrepresentation was consumer-oriented — it was likely to mislead a reasonable consumer acting reasonably under the circumstances; and, in the contexts established/alleged in paragraphs 51-78 and 151-193 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded by consumer-oriented misrepresentation which was intended to mislead a reasonable "consumer" acting reasonably under the circumstances. — see *Butler,*

*supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

195. For the general public customer/users, Defendant Clean Rite's patterns and practices of willful misrepresentation has resulted in consumer injuries and harm to the public interest; and, in the contexts established/alleged in paragraphs 51-78 and 151-194 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded by the scam's patterns and practices of willful misrepresentation which resulted in damages to himself and harm to the public interest. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

196. In the contexts of GBL §350 violations established/alleged in paragraphs 51-78 and 151–195 above, the Plaintiff seeks to enjoin the unlawful acts and practices described herein and to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief to be determined by the Court.

**COUNT VII**

**Fraudulent Omission**

197. The Plaintiff incorporates by reference and re-alleges herein all paragraphs above.

198. For the general public customer/users, Defendant Clean Rite failed to disclose its policy that led to unusable Laundry Card remainder balances which are unlawfully retained as a hidden fee; and, in the contexts established/alleged in paragraphs 51-78 and 151-197 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was similarly defrauded because the scam failed to disclose policies that led to unusable Laundry Card remainder balances which are unlawfully retained as a hidden fee. — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

199. For the general public customer/users, Defendant Clean Rite's false and misleading omissions were made with knowledge of their falsehood; and this fraudulent omission was intended to induce reasonable consumers/users to purchase Laundry Cards and to pay substantially more they otherwise would have had cause to anticipate; and, in the contexts established/alleged in paragraphs 51-78 and 151-198 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was defrauded because of the scams false and misleading omissions which were made with knowledge of their falsehood; and the scam's fraudulent omissions were intended to induce reasonable consumers/users to accept the Laundry Cards without noticing or discovering that the Aacia/Clean Rite "clients" to pay digital cah money they would have had no cause to anticipate — see *Butler, supra*; and see *Henrietta D., supra*; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]*,*

200. For the general public customer/users, the fraudulent actions of Defendant Clean Rite caused damage to the Plaintiff, and he is entitled to damages, reasonable attorneys' fees and costs, and any other just and proper relief to be determined by the Court; and, in the contexts established/alleged in paragraphs 51-78 and 151-199 above, there is a hidden class of Acacia/Clean Rite scam victims, including the vulnerable, elderly Plaintiff with disabilities; and he was concurrently defrauded in a discernably different way, and he is entitled to damages, reasonable attorneys' fees and costs, and any other just and proper relief to be determined by the Court

## RELIEF DEMANDED

WHEREFORE, the Plaintiff seeks a Declaratory Judgment which focuses a spotlight on federal dollars "being used to perpetuate patterns of conduct which inhibit the full enjoyment of Federal financial assistance by all groups within our society" — harming especially the men and women with disabilities who are defined as members of "protected class" in federal, state and municipal law. — see 45 FR 72995 (Nov. 4, 1980) re US Exec. Order 12250 (EO 12250), ''Leadership and Coordination of Nondiscrimination Laws;'' and see EO 12250 Signing Statement, November 2, 1980; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant Oyeniyi was wrong as a matter of law when he told the Plaintiff that written requests for

reasonable accommodation made by persons with disabilities and the supporting medical documentation are construed to be "only for lawyers, nothing to do with us or what we do." — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that the public entity Defendants and NYC contractor Defendants functioning as *de facto* public entities, have acted individually and together with at least deliberate indifference to the strong likelihood that a violation of federally protected rights would develop from unlawful patterns and practices

(a) in derogation of well-settled statutory and contractual duties of care; and

(b) in violation of inter-related, deliberately redundant federal, state and municipal anti-discrimination laws creating a "protected class" based on disability. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant NYC, because of the extraordinary misconduct of HRA/DSS/DHS, has been shown to be unfit to be a continuing recipient of federal funding streams; and this is because of recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] in contexts of federal financial assistance misused in concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and 42 USC §12203

[retaliation]. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]


WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that all anti-discrimination covenants in federal contract agreements with NYC, because of the extraordinary misconduct of HRA/DSS/DHS, shall be strictly enforced to the fullest extent anticipated by the prolix, repetitive and purposefully redundant administrative requirements which are contractually accepted by all recipients of federal dollars nationwide. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]


WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant Acacia is unfit to receive federal financial assistance as an HRA/DSS/DHS contractor; and this is because of recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] in contexts of federal financial assistance misused in concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and 42 USC §12203 [retaliation]. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]


WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant  Community Housing Initiatives (CHI) is unfit to receive federal financial assistance as an HRA/DSS/DHS contractor; and this is because of recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violations of 42

USC §1985 [conspiracy to interfere with civil rights] in contexts of federal financial assistance misused in concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and 42 USC §12203 [retaliation]. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that all anti-discrimination covenants in the many federal contracts affecting Defendant NYC's HRA/DSS/DHS and Defendant Acacia and Defendant CHI shall be reviewed and rewritten to reflect the amended NY Constitution, Article I, §11(b). [dismantle discrimination on the basis of disability]; and

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant NYC, because of the extraordinary misconduct of DOHMH, is unfit to be a continuing recipient of federal funding streams because of its participation in the Acacia/Clean Rite scam and because of recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] in contexts of federal financial assistance misused in concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and 42 USC §12203 [retaliation]. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that all anti-discrimination covenants in federal contract agreements with NYC, because of the extraordinary misconduct of DOHMH, shall be strictly enforced to the fullest extent

anticipated by the prolix, repetitive and purposefully redundant administrative requirements which are contractually accepted by all recipients of federal dollars nationwide. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant Acacia is unfit to receive federal financial assistance as a DOHMH contractor; and this is because of recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] in contexts of federal financial assistance misused in concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and 42 USC §12203 [retaliation]. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that all anti-discrimination covenants in the many federal contracts affecting Defendant NYC's DOHMH and Defendant Acacia shall be reviewed and rewritten to reflect the amended NY Constitution, Article I, §11(b). [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant NY, because of the extraordinary misconduct of DOH, is unfit to be a continuing recipient of federal funding streams because of its participation in the Acacia/Clean Rite scam and because of recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere

with civil rights] in contexts of federal financial assistance misused in concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and 42 USC §12203 [retaliation]. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that all anti-discrimination covenants in federal contract agreements with NY, because of the extraordinary misconduct of DOH, shall be strictly enforced to the fullest extent anticipated by the prolix, repetitive and purposefully redundant administrative requirements which are contractually accepted by all recipients of federal dollars nationwide. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant Acacia is unfit to receive federal financial assistance as a DOH contractor; and this is because of recurring bad faith violations of 42 USC §1986 [action for neglect to prevent] and pernicious bad faith violations of 42 USC §1985 [conspiracy to interfere with civil rights] in contexts of federal financial assistance misused in concurrent bad faith violations of 42 USC §12134(b) [criteria or methods of administration] and the EFTA and 42 USC §12203 [retaliation]. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that all anti-discrimination covenants in the many federal contracts affecting Defendant NY's

DOH and Defendant Acacia shall be reviewed and rewritten to reflect the amended NY Constitution, Article I, §11(b). [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant CMO has created a record of scant or no meaningful affirmative and prophylactic effects for the protected class of homeless men and women with disabilities and contexts of unlawful discrimination like those identified in this action. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that Defendant CMO shall develop a Court-approved plan — including affirmative and prophylactic actions in compliance with 28 CFR §35-130 and 28 CFR §§35.160–35.164 — which projects timely and meaningful CFTH interventions in future contexts of unlawful discrimination like those identified in this action. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant CFTH has created a record of scant or no meaningful affirmative and prophylactic effects for the protected class of homeless men and women with disabilities and contexts of unlawful discrimination like those identified in this action; and

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that Defendant CFTH shall develop a Court-approved plan — including affirmative and prophylactic actions in compliance with 28 CFR §35-130 and 28 CFR §§35.160–35.164 — which projects

timely and meaningful CFTH interventions in future contexts of unlawful discrimination like those identified in this action. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant OSC has created a record of scant or no meaningful affirmative and prophylactic effects for the protected class of homeless men and women with disabilities and contexts of unlawful discrimination like those identified in this action. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that Defendant OSC shall develop a Court-approved plan — including affirmative and prophylactic actions in compliance with 28 CFR §35-130 and 28 CFR §§35.160–35.164 — which projects timely and meaningful OSC actions in future. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks a Declaratory Judgment that Defendant CDO has created a record of scant or no meaningful affirmative and prophylactic effects for the protected class of homeless men and women with disabilities and contexts of unlawful discrimination like those identified in this action. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks an Injunctive Order requiring that Defendant CDO shall develop a Court-approved plan — including affirmative and prophylactic actions

in compliance with 28 CFR §35-130 and 28 CFR §§35.160–35.164 — which projects timely and meaningful CDO interventions in future. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

WHEREFORE, the Plaintiff seeks judgment against each Defendant, as follows:

(a) For an Order declaring that each Defendant's misconduct violates the statutes referenced herein; and

(b) For an Order finding in favor of the Plaintiff on all Counts asserted herein; and

(c) For an Order enjoining each Defendants from continuing the unlawful practices detailed herein; and

(d) For an Order of prejudgment interest on all amounts awarded; and

(e) For an Order of restitution and all other forms of equitable monetary relief to be assessed against each Defendant in amounts to be determined by the Court; and

(f) For an Order of compensatory, statutory, and special/punitive damages — including specific extraordinary damages per UCC §2-313 [express warranty] — to be assessed against each Defendant in amounts to be determined by the Court, including the following specifically identified Defendants:

(i) NYC

(ii) Molly Park, in her official capacity as head of NYC HRA/DSS/DHS; and

(iii) John Hammond, in a personal capacity; and

(iv) Abiodun Oyeniyi, in a personal capacity; and

(v) Eve Cleghorn, in a personal capacity; and

(vi) Rose Nantango, in a personal capacity; and

(vii) Lydia Picker, in a personal capacity; and

(viii) Akim Norville, in a personal capacity; and

(ix) Victor Amelyanchyk, in a personal capacity; and

(x) Lynmaris Albors, in her official capacity as head of Acacia; and

(xi) Lynmaris Albors, in a personal capacity; and

(xii) Gabriela Gonzales, in a personal capacity; and

(xiii) Sana Campbell-Gilmore, in a personal capacity; and

(xiv) Cleavon Jenkins, in a personal capacity; and

(xv) Cotandra Davis, in a personal capacity; and

(xvi) Jane Doe1/Correa, in a personal capacity; and

(xvii) Jane Doe2/Bostick, in a personal capacity; and

(xviii) Angel Goddard, in a personal capacity; and

(xix) Lila Montanez, in a personal capacity; and

(xx) Tiffany Teague, in a personal capacity; and

(xxi) Jane Doe3/Everett, in a personal capacity; and

(xxii) Valerie Cook, in a personal capacity; and

(xxiii) Ernesto Meyers, in a personal capacity; and

(xxiv) Andrea Watkins, in a personal capacity; and

(xxv) Rise Abdullah, in a personal capacity; and

(xxvi) Angela Brent, in a personal capacity; and

(xxvii) Ron Abad, in his capacity as head of CHI; and

(xxviii) Richard Lewis, in a personal capacity; and

(xxix) Claudette Phipps, in a personal capacity; and

(xxx) Earl Holder, in a personal capacity; and

(xxxi) Laundry Capital Co. LLC, aka Clean Rite Centers

(xxxii) David Giffin, in his official capacity as head of NYC CFTH; and

(xxxiii) NY; and

(xxxiv) James McDonald, in his official capacity as head of the NY DOH; and

(xxxv) Thomas DiNapoli, in his official capacity as head of NY OSC; and

(xxxvi) Kimberly Hill, in her official capacity as NY CDO; and

(g) For an order requiring that Defendant Acacia shall pay any and all compensatory, statutory, special/punitive damages which may be assessed by the Court against Defendants Morse/CMO, Giffin/CFTH, DiNapoli/OSC, Hill/CDO; and

(h) For an order requiring that Defendant Acacia shall pay any and all reasonable attorneys' fees and expenses/costs which may be incurred by Defendants Morse/CMO, Giffin/CFTH, DiNapoli/OSC, Hill/CDO;and

(i) For an order for such other relief as this Court deems fit and proper. — see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]


Dated: July 21, 2025                     Respectfully submitted,
       New York, New York
                                         /s/ Ronald Davidson

                                         Ronald Davidson
                                         267 Third Avenue
                                         New York, New York 11215
                                         347-560-1970
                                         ron.center2025@gmail.com

115